62 271
101 20

## THE MERCHANTS' AND PLANTERS' NATIONAL BANK *vs.* THE TRUSTEES OF THE MASONIC HALL.

1. The credibility of witnesses and the weighing of conflicting testimony are questions peculiarly within the province of the jury, and where the presiding judge is satisfied with the verdict thereon, this court will not interfere except in case of abuse of discretion by him.

2. Where bonds with coupons for the interest are converted, a verdict for the value of the bonds and of the mature coupons at the time of the demand, with interest on such aggregate value from the date of the demand, is not excessive.

3. Where bonds are hypothecated to secure a loan to one firm, and such debt is settled, and the firm being changed a new debt is created, notice of the title of the true owner of the bonds before such new debt or loan is created, will operate to prevent the holder of the bonds as collateral security from acquiring title against such true owner; and such notice may be proven by circumstances as well as by direct proof.

4. Possession alone of a security negotiable by delivery before due, is

presumptive evidence of title thereto; but when such security is proven to have been stolen or otherwise appropriated in fraud of the rights of the owner, then the *onus* is upon the possessor to show that he took it *bona fide* and for value; and upon his showing that, then the owner must show *mala fides*—that is, that the possessor has notice, actual or constructive, of the title of the true owner.

5. That perjury should not be imputed, if avoidable, and that a witness is to be believed unless impeached in some of the modes known to the law, is good law as far as it goes; and if a party desires that the different modes of impeachment should be specified by the court, he should request that it be done.

6. When bonds are taken as collateral security for a debt, when the debt is paid for which they were hypothecated, the holder of them as collateral cannot retain them after such payment ; and a charge to that effect is not erroneous in the case of a long account current between the parties of moneys borrowed and paid, running through several years, by a firm which changed its members, and where there was evidence going to show that the debt for which the bonds were originally hypothecated was paid, and new debts made by a changed firm, and circumstances tending to show notice to the holder of the true owner of the bonds between the payment of the old and the creation of the new debt by a changed firm.

7. There being no material error in the rulings of the court on the trial, and no abuse of discretion in overruling the motion for a new trial on the ground that the verdict is decidedly and strongly against the weight of evidence, the judgment must be affirmed.

Verdict. Negotiable instruments. Trover. Damages. *Onus probandi*. Title. Charge of Court. New trial. Before Judge POTTLE. Richmond Superior Court. April Adjourned Term, 1878.

The Trustees of the Masonic Hall brought trover against the bank for certain negotiable coupon bonds of the cities of Selma, Atlanta and Augusta. Plaintiffs contended as follows: That Jno. D. Butt was their treasurer, and as such had these bonds in hand ; that he had them on deposit in the bank, of which he was also a director; that his firm (Butt, Boyce & Co.) needed money and the bank agreed to let them have it, taking certain stock known as the Bath stock as collateral security ; but as they did not

have the Bath stock at hand just then, these bonds, or a part of them, were temporarily pledged in its place ; that afterwards Butt's firm wanted more money, and the bank agreed to let them have it, really upon the faith of a mortgage ; but as it was unlawful for the bank to lend money on mortgages, it was agreed that these bonds should be held as a nominal collateral with which to deceive the bank examiner; that at times Butt would withdraw the bonds to detach a coupon or to show them to the trustees when called upon to do so, and then return them to the bank ; that at last, after some temporizing, it declined to give them up any more ; that during these negotiations Butt's firm changed two or three times, by the addition or withdrawal of a member, and each new firm would give its notes for its indebtedness, and the bank all the time had notice of the real ownership of the bonds.

Defendant claimed to be a *bona fide* pawnee of the bonds as collateral from Butt, and without notice of any defect in the title.

The evidence was conflicting. The jury found for the plaintiffs. Defendant moved for a new trial on the following grounds :

1. Because the court, after having charged the jury as follows, to-wit : "If the bank had no notice when the first transfer was made, of the fact that the bonds belonged to John D. Butt, treasurer of the Masonic Hall, no notice afterwards given can change the bank's title to the bonds while the notes given to secure the loan were in process of renewal," added as follows, to-wit, " but if the original notes were discharged by the taking of new notes in the name of a new firm, and these securities were pledged for the payment of the new notes, and the bank had notice when the new notes were made that the Masonic Hall owned the bonds, the knowledge of that fact makes the transfer as much bad faith as if they had notice originally. You have before you notes made by John D. Butt & Bro., Butt,

Boyce & Co., and J. D. & J. W. Butt, to the Merchants' and Planters' National Bank. None of those notes show on their face what collaterals were given to secure their payment. If the notes of John D. Butt & Bro. were given to secure a loan to the bank, and the bonds in question were pledged without knowledge by the bank that they belonged to the Masonic Hall, no subsequent notice can affect the title of the bank as to the original makers of the notes, but if the bank afterwards contracted, in 1873, with Butt, Boyce & Co., in continuation of the liability of the old firm, and the same bonds were pledged as security for the loan to the new firm, and the bank at that time had such notice as I have told you is legal notice, then their title to the bonds, if acquired then, was not in good faith."

2. Because the court charged the jury as follows ; "Though you may believe that the bank got a good title to the bonds, yet if you find that the debt for which the bonds were given was paid off without resorting to those bonds for the security, of course the defendant is not entitled to retain them, there being no evidence that the debt secured by the bonds had been paid."

3. Because the court charged the jury as follows: "A general rule of the law is, that a witness is to be believed, unless impeached in some of the modes known to the law," and did not instruct the jury what are such modes.

4. Because the court charged the jury as follows: "You cannot impute perjury to any one if you can avoid it."

5. Because the court refused to charge, as follows: "If the bank received these bonds in good faith for value without notice, the title passed at the time, and such title is not defeated by the fact that the cashier subsequently allowed Butt to withdraw the bonds, for a purpose unknown to the cashier, on promise to return them, [nor by any subsequently acquired notice, whether by the deposit of coupons or otherwise]," the court giving such request in charge, except the words in brackets.

6. Because the court refused to charge as follows : "The notice, however, whether actual or constructive, must be brought home to the holder at the time he acquires the note or bond. Notice subsequently acquired cannot defeat the title of the holder, and no evidence is to be considered by the jury as establishing *mala fides* of the holder, which does not serve to show that he had such notice at the time, the very instant, he acquired by the purchase or deposit as security, the possession of the paper."

7. Because the court refused to charge, as follows : "When a good title has been acquired in bonds deposited as collateral security for a debt, knowledge subsequently obtained that the depositor did not have a good title at the time of the deposit, cannot affect the title already vested in the holder. Neither can subsequent renewals of the same debt affect such title."

8. Because the court refused to charge as follows : " In civil cases juries should determine the cause by the preponderance of the testimony, but where they find the testimony on each side equally balanced then nothing is proved, and they should find for the defendant."

9. Because the court charged as follows: "Even if the bank received said bonds *bona fide*, for value, and without notice, in the due course of business, and yet if it seeks to hold them as collateral, it is only entitled to hold them for the actual amount of the debt due to it, there being no tender or offer to pay the debt due, and defendant being entitled to hold said bonds, if at all, as long as anything was due."

10. Because the court charged the jury as follows : " When it is shown *prima facie* that the bank took the bonds in due course of trade for value, that they were not due and payable to bearer, from John D. Butt, the legal presumption is that the possession was *bona fide*, that it is without notice of a fraudulent title, and the burden of proof is on those who assert *mala fides*, that is, bad faith, and this

upon the principle that fraud is never presumed and inno-
cence is presumed until guilt is shown." Which charge
was inaccurate, erroneous and illegal, and especially in this,
that it imposed upon the defendant the *onus* of showing
*prima facie* that it took the bonds in due course of trade
and for value, which was the legal presumption without
any proof.

11. Because the verdict is contrary to the evidence and
the law in allowing interest on the amount found, the plain-
tiffs having elected to claim damages and not the bonds.

The court added this note:

The court was asked to charge by defendant: " To con-
stitute *mala fides*, so as to defeat title, there must be notice
that the bonds were not the property of the person who
offers them. This notice must be actual or constructive ;
it must be based on circumstances which would place a pru-
dent man on his guard in purchasing negotiable papers."

This was given as requested, and the latter part as quoted
in the sixth ground, beginning with the words " the notice,
however," etc., was refused.

The motion was overruled by the court in the following
written decision :

" The motion for new trial in this case is put upon sev-
eral grounds. It is first claimed that the verdict of the
jury was contrary to the evidence and without sufficient
evidence to support it. In the argument it was said that there
was no credible evidence to support it. The adjudications
are so numerous and harmonious on this subject that it is
unnecessary to cite them. The domain of juries on *facts*
belongs exclusively to them, unless there is a want of evi-
dence to support the verdict, or such a flagrant abuse of
their functions as to indicate bias. If there is evidence
to support it, courts will rarely ever disturb the find-
ing. In this there is abundant evidence to support it, if
the witness Butt is to be believed. The credibility of his

testimony was a matter for the jury alone. If a court were to set aside a verdict, because the presiding judge did not believe the testimony, it would usurp the functions of the jury, and substitute the opinion of *one* man for the sworn opinion of *twelve*. It is unsafe for any one, even a judge, to undertake to say how testimony would have been considered by him if he had been on the jury. It is only when persons are put in positions under oath to feel responsibility that they can know how to weigh and consider testimony.

" The jury in this case were purged of all members of the masonic order, and were put on their *voir dire* as to their bias.

" John D. Butt testified positively to notice on the part of the bank, and that Branch made the contracts with him with full knowledge of his title. If his testimony is the truth, the bank got no title. Shall a reviewing court say that it is not the truth ?

" It is argued that his testimony was contradictory, and given under a pressure. This view was ably presented to the jury. The whole of it was dissected, and in the end they chose to believe the witness. In addition to this, there was no positive testimony offered by defendant as to the main fact in the case. The other grounds are alleged errors of the court and the largeness of the verdict.

" The charge was in writing—the whole of it. When the whole charge is considered in connection with the requests of defendant made and given, I cannot see, after a careful review of them, where any error occurred.

" The court charged that the plaintiffs must make out their case. Nor does the charge as stated in the tenth ground put the *onus* on the defendant, nor is it inconsistent with the first and second charges given by request. The charge must have reference to the proof. The only evidence before the jury that the bonds sued for were in the possession of the bank was that of Butt, the plaintiffs' witness. The proposition given in the tenth ground was an instruc-

tion as to the *bona fides* of the holding, and was intended to show that the burden was on the plaintiffs to show *mala fides*. There was no question that a portion of the Selma bonds, according to Butt's testimony, were deposited as a collateral, to be redeemed by the Bath stock—such was Butt's testimony—so that, as to a portion of the bonds, the plaintiffs showed possession in the bank, and for value. As to the possession of the others, this was a matter of dispute, whether the possession was in the bank or in Butt, as the legal presumption as to possession was given in the language of the Code, and as the charge (10th ground) was given on the point as to notice (which was the main point contested in the case), the two are not inharmonious, and neither, the court humbly thinks, was 'inaccurate, illegal or erroneous.'

" The court gave the defendant the full benefit of the principle, that if there was no notice when the first hypothecation was made, no subsequent notice after renewal could affect the title ; but the court was careful to keep in view before the jury the distinction between a renewal and a new contract, hence the refusal to charge the words in brackets in the fifth ground : as an abstract statement of the law it was correct, but after the court had charged them on the effect of the new contract, that might have misled the jury, hence the omission.

" The record shows that the firm changed twice pending these negotiations. The old notes were taken up and stamped paid. If notice had been given when the first loan was made to one firm, and the bonds still remained in the bank, or new notes were given by different firms and for different amounts, every new note was a new pledge, and notice after acquired would have been as much *mala fides* as the first. If the proposition is not correct, then another must follow, namely : that the extinction of the old notes carried with it the extinction of the contract for security.

" It is again urged that the court erred in charging the jury that the defendant had no title if the debt was paid.

"To show that this was an issue made on the trial, a charge was invoked by counsel for defendant on the same point; that request was that the burden was on the plaintiffs to show that the debt was paid. This was given, and was a strange request if there was no evidence before the jury to support it. If it was right to tell the jury when the *onus* was cast, it was certainly right to inform them if, in assuming the burden, that fact appeared in proof, the collaterals were not good in the hands of the defendant.

"It is next stated that the court erred in its instructions as to impeachment of witness. If counsel had desired instruction as to what were the modes of impeachment known to the law, they should have asked for them. This was as fair for the defendant as the plaintiffs, for both sides attacked the leading witnesses. The usual methods were not resorted to on either side, except to show contradictory statements; and on this subject the court was careful to give to the jury guides for their information, namely: appearance, manner, and the accord of testimony with reason and experience.

"It is a well known rule that juries are not to impute perjury, if they can avoid it. Perjury is a high crime, and common charity for the weaknesses of human nature, the fallibility of memory, should incline to the belief that a mistake has been made, rather than that an atrocious crime had been committed.

"The exclusion of testimony as to the custom of this and other banks is alleged as error. During the progress of this case, the defendant objected to introduction by the plaintiffs of proof as to the custom of banks. This was excluded. Proof of custom is resorted to to raise a presumption that the party, from a knowledge of its universality, followed the custom. The question here was what the bank did, not what was its custom or that of other banks, and especially was this improper in view of the testimony of Mr. Branch, its president, that this bank did not do so.

"After a careful review of the whole charge of the court

in connection with the request, I am satisfied that the law of the case was fairly submitted to the jury, on the whole; and after going through with care the mass of testimony, I see no ground for setting the verdict aside. The cases cited to show that interest cannot be added to damages are those in which trover was brought to recover cotton. This is not that case. If the bank got no title to the bonds, they got none to the coupons. I cannot see how the recovery is too large if the jury found the highest value proven (which they had a right to do) of the bonds with interest.

"It is therefore ordered and adjudged that the motion for new trial be overruled."

To this judgment the defendant excepted.

ROBERT TOOMBS; J. C. C. BLACK; BARNES & CUMMING, for plaintiff in error.

W. T. GOULD; J. GANAHL; J. S. & W. T. DAVIDSON; HOOK & WEBB, for defendants, cited on notice, Code, §2200; 34 *Ga.*, 294; 53 *Ib.*, 635; 56 *Ib.*, 498; 57 *Ib.*, 378; 54 *Ib.*, 635; 13 Richardson (S. C.), 291; 1 Peters, 299; Collection Compendium, 379; Morse on Banking, 108–116.

JACKSON, Justice.

1. This was an action brought to recover certain bonds which were hypothecated to the bank by John D. Butt, to secure certain debts which he owed there in partnership with others. He was treasurer of the Masonic hall, and a director of the bank; the bonds belonged to the hall, and the case turned, in respect to the controlling question, on the point whether the bank had notice that the title was in the Masonic Hall, and not in Butt, when it took the bonds from him as collateral security for his debt. If it did not have notice, it was protected; if it did have notice, it was not protected, and the true owner was entitled to recover. On this point the testimony was conflicting; the jury passed

upon it; the presiding judge who heard the witnesses and tried the case, overruled the motion for a new trial, and the sole question for us is, did he abuse the discretion with which the law invests him? The credibility of witnesses is peculiarly matter for the jury, and, in review, the presiding judge has better opportunities of passing properly upon their finding than the appellate court. His is the discretion on which the statute places the decision of the rights of the party for a new hearing, and only when it is abused, as repeatedly ruled by this court, ought the appellate court to interfere. The cases are too numerous on this point to cite them.

We cannot say that the discretion of the judge has been so abused in the present case as to require us to set aside the verdict and order a new trial, over his head and in the teeth of his judgment. Whether this court, had it been in the jury-box, would have found the verdict, or, had it been on the circuit bench, would have sustained it, is not the question; but the question is, did the judge who tried the case abuse the discretion the law confides to him in sustaining the verdict when the credibility of witnesses and conflict of testimony had to be passed upon by the jury? So considering the question made before us, we do not feel at liberty to interfere on the ground in the motion, that the verdict is decidedly against the weight of the evidence.

2. It is objected that the verdict is excessive. This objection seems to be based on the idea that the jury estimated the damage of the plaintiffs to be the value of the bonds and of the mature coupons at the time of the demand, with interest on such aggregate value from the demand. We are unable to see the error of this estimate. The Masonic Hall, when the bonds and coupons which had matured were converted, was certainly damaged that much. Indeed, it was held in 35 Ga., 40, that interest on annual hire of property was recoverable as part of the damage to the true owner of the property wrongfully converted; and

in 57 *Ga.*, 418, it was held, that on stock wrongfully converted, not only dividends, but interest on the dividends, were recoverable as damage to the owner. Under these decisions, the recovery in the case at bar might have been larger.

3. It is again objected, that the court charged to the effect that, though the bank, when it first took these bonds from Butt, may not have had notice, yet if the debt for which they first were hypothecated was paid, and they were hypothecated for another debt of other firms, of which Butt became a member, and the bank got notice before the second hypothecation, then its title would not be good. We do not see the error of this charge. There was evidence going to show that Butt changed his firm relations—was at one time a member of one and then of a different firm, by adding or subtracting a partner—during the time that the bonds were in the bank, and that the coupons were collected by him and credited on the bank books to the Masonic Hall—he being allowed to take out the bonds for that purpose. Such being the evidence, it may be that notice was conveyed to the bank between these changes of firms, and the making of new notes with new parties, and not the renewal of old ones; or that their own books showed circumstances which amounted to constructive notice of the title of the Masonic Hall, after such novation.

So, too, we think there was no error in the refusal to charge on the subject of subsequently acquired notice—that is, that the bank, having once got good title, held it, notwithstanding future notice by deposit of coupons or otherwise. It depends, where the court put it, upon the question whether the debt for which they were hypothecated had been paid, and a new debt by a new firm had been created, before such notice, or circumstances from which notice could have been inferred.

4. The general rule in regard to the doctrine of the *bona fides* or *malo fides* of the bank in receiving the securities

as laid down by the court, and the *onus* upon the respective parties, is substantially that given by this court in the case of *Mathews vs. Poythress,* 4 *Ga.,* 287. The summing up of the principles extracted from the authorities after a careful and elaborate review of them by Judge Nisbet, is to be found in the report of that case on the 305th page of 4th *Ga.,* and is as follows:

"He who buys a promissory note, bill of exchange, or any other security negotiable by delivery, before it is due, acquires a title to such security and a property in it by virtue of his possession.

"But if such security be proven to have been lost or stolen, or in any other way appropriated in fraud of the rights of the owner, then such purchaser does not acquire a title to it until he proves that he took it *bona fide and for value.*

"And in that event—that is, when the purchaser has proven that he took the security *bona fide* and *for value*— his title may be defeated by proof on the part of the defendant in the action, where suit is brought upon the note or bill, or of the plaintiff, when the suit is brought for the note or bill, that he took it *mala fide.*"

The law laid down by Judge Pottle in this case, in his charge to the jury, does not vary materially from this summary.

5. The instructions in regard to the imputation of perjury, and the impeachment of witnesses, etc., etc., as explained by the court in overruling the motion for a new trial, are law as far as they go, and if the defendant desired further instructions as to modes of impeachment, it was its duty to ask for them.

6. Error is also assigned upon the charge that the holder of the collaterals could retain them only so long as his debt was unpaid. This objection seems based on the ground that there was no evidence to support the charge. It seems, however, that there was a long account between the bank

and Butt, running through several years, embracing many notes, some paid and others renewed; that the firm of which Butt was a member changed partners once or twice; that the new as well as the old firm borrowed money through Butt from this bank; that Butt took out the bonds from time to time and collected the coupons and deposited them to the credit of the true owner of the bonds on the books of the bank, tending to show notice, and thus that there was evidence from which the jury might conclude that though the original hypothecation gave title to secure the first debt, yet, when that was paid, circumstances charged the bank with notice, and it could not longer retain the bonds to secure other debts after notice. At all events, there is evidence on which the charge may rest; and of the principle of law announced there can be no doubt.

7. On a careful review of the case, we are unable to see any material error of law requiring us to send it back for a new trial; and on the main issue, the weight of the evidence and the credibility of the witnesses, the jury and the presiding judge have passed more satisfactorily than we can do from the light of this record, unaided by the appearance and manner of the witnesses, and knowledge of character gathered from the vicinage. We consider, therefore, that the law gives us no power in such a case to interfere, and that we have no alternative but to hold that the discretion of the court below has not been abused, and to affirm the judgment.

Judgment affirmed.