VALADE *v.* MASSON.

1. SUBSCRIPTIONS TO STOCK—FRAUD—GIFTS.

  Fraud in obtaining subscriptions to stock is not shown by evidence that, after the execution of the subscription contract, the subscriber obtaining such subscriptions received from another subscriber an additional share of stock as a gift.

2. CONTRACTS—DISCHARGE—NOTES—EVIDENCE.

  A contract for the purchase of a horse, executed by a number of subscribers for shares therein, provided that the purchase price should be secured by joint notes. Only a part of the subscribers signed the notes, and there was no evidence that they were received in satisfaction of the contract. *Held,* that an action for the purchase price might be maintained against a subscriber to the contract.

3. SALE—TENANTS IN COMMON—PARTNERSHIP.

  Where the owner of a horse sold to each of several subscribers a one-sixteenth interest therein, the purchasers became tenants in common; and the fact that they intended to, and some of them did, subsequently form a partnership based upon the ownership of the horse, did not affect the character of the original contract of purchase.

Error to Monroe; Lockwood, J. Submitted October 21, 1903. (Docket No. 51.) Decided November 9, 1903.

*Assumpsit* by Jerome J. Valade against Joseph Masson upon a contract of subscription for the purchase of a horse. From a judgment for plaintiff, defendant brings error. Affirmed.

Thirteen persons, including the plaintiff and defendant, entered into an agreement January 14, 1898, with Howe & Grindell, for the purchase of a certain stallion, said contract reading as follows:

"Tartar, No. 19,755.

"Howe and Grindell agree to sell the above-named stallion for $1,600 to the other undersigned subscribers,

who, wishing to improve their stock, agree to pay Howe and Grindell $100 for each share in said stallion.

"Capital stock, $1,600; No. shares, 16.

"Payment to be made cash; or one-third in one year, one-third in two years, and one-third in three years, secured by joint notes, with interest.

"1st payment Sept. 1st, 1899.

"2d payment Sept. 1st, 1900.

"3d payment Sept. 1st, 1901."

Twelve shares of the stock were subscribed, two parties subscribing for a half share each, Howe & Grindell retaining four shares. This contract was signed by Howe & Grindell and by the thirteen subscribers. On February 9th following, seven of the contractors, including plaintiff and defendant, executed to Howe & Grindell three promissory notes, aggregating $1,600, in accordance with the terms of the contract. Howe & Grindell immediately indorsed a payment upon them of $400, being the amount of the shares held by them. Plaintiff paid $100, and in the presence of the others his name was then erased from the notes. On February 12th following, eight of the original contractors and Howe & Grindell executed articles of copartnership under the name of the Newport Horse-Breeding Company. They elected a president, secretary, treasurer, manager, and board of directors, prescribed the duties of each, and provided for a division of the earnings. These articles of partnership were signed by two who did not sign the notes, and one who signed the notes did not sign the articles of copartnership; but all were subscribers to the original contract.

The enterprise was not a success, and on May 6, 1899, a paper was executed dissolving the partnership by mutual consent, except so far as it was necessary to continue it for the final liquidation and settlement of the business. This was signed by ten, including the parties to this suit and Howe and Grindell. On the same day another paper was executed, substantially to the same effect as the other, except that it directed one of their number (Rivard) to sell the horse, pay for his keeping and expenses, and divide

the proceeds among the sixteen shares of stock. Rivard did as directed, sold the stallion, paid all the debts of the partnership, and divided the proceeds — a small amount — among the shareholders, including the defendant. This agreement was signed by nine. None of the agreements except the first states the amount of shares held by the makers. Sometime between the date of the original contract and the date of executing the notes or the articles of copartnership, plaintiff became the owner, by gift, of another share. I find no evidence, except by inference, who gave him this share. In June, 1898, plaintiff purchased from Howe & Grindell the notes and contract, paid therefor $650, and took proper assignments. On April 16, 1900, plaintiff released one of the makers of the notes (John M. Beaudrie) from liability thereon. Defendant has paid nothing either upon the notes or his contract of subscription.

Plaintiff declared upon the original contract of subscription, the notes, and the common counts. Defendant gave notice of several defenses,—among them, that (1) the relations between the parties were those of partners, that the partnership had never been settled, and that equity alone has jurisdiction; (2) the contract and notes were obtained by fraud. The court instructed the jury that there could be no recovery upon the notes, because the release of one of the makers changed the liability of the others, and vitiated the notes. Recovery was had upon the original contract; the court instructing the jury that the plaintiff was entitled to recover unless plaintiff was guilty of fraud in inducing defendant to believe that he had subscribed and paid for two shares of the stock, when in fact he had subscribed and paid for only one. The jury rendered a verdict for the plaintiff.

*Willis Baldwin* and *John O. Zabel*, for appellant.

*C. A. Golden*, for appellee.

GRANT, J. (*after stating the facts*). 1. Plaintiff subscribed for only one-sixteenth interest. The record is

barren of any evidence tending to show any intended fraud by any one in subscribing for the stock. Plaintiff paid Howe & Grindell for his one share. That contract was made in good faith by the plaintiff and all the others. Afterwards, but the precise time is not shown, plaintiff became the owner of another share by gift, but who gave him this share does not clearly appear; neither is it material. It was before the articles of partnership were executed. There is testimony to show that when the notes were executed he stated that he owned two shares. The contract being valid, each subscriber was bound by it, and liable for the amount of his subscription. Any subscriber could thereafter dispose of his stock for whatever consideration he saw fit to receive, or without any consideration. The court might therefore with propriety have instructed the jury that there was no evidence of fraud on the part of the plaintiff in the execution of the contract. The question of fraud, however, was left to the jury, which determined, and we think properly, that the plaintiff was not guilty of any fraud. It follows that this case is not within the principle enunciated in *Zabel* v. *Telephone Co.*, 127 Mich. 402 (86 N. W. 949); *Comstock* v. *Howd*, 15 Mich. 237; and *Moore* v. *Elevator Co.*, 122 Mich. 48 (80 N. W. 1015).

2. The contract of subscription has never been canceled. There was no agreement, express or implied, at the time of the execution of the notes or of the contract of partnership, that this contract should be abandoned. In order to defeat recovery upon it, it must appear that the notes were received in payment and satisfaction of it. There is no evidence that they were so received. The contract itself provided that the consideration (that is, each one's share subscribed) was to be secured by a joint note, with interest. Furthermore, the notes were not executed by all the subscribers. This would be an additional reason on the part of Howe & Grindell not to receive the notes of part of the subscribers in payment of the whole subscription, and there is no evidence that they did so intend.

3. This contract was not a partnership affair. That the subscribers for this stock intended to subsequently form a partnership based upon the ownership of the horse did not make the original contract one of partnership. Howe & Grindell sold to each of the subscribers a one-sixteenth interest in the horse. By this means they became tenants in common of the horse, each subscriber owning an undivided interest to the amount of his subscription. That some of them afterwards formed a partnership to run the horse does not affect the character of, or the liability upon, the original contract.

Judgment affirmed.

The other Justices concurred.