## WATSON v. FIRST STATE BANK OF DALLAS. (Nos. 286–3536.)

(Commission of Appeals of Texas, Section A. March 1, 1922.)

**1. Pledges ⬥⇒25—Renewal note held to reserve rights in property pledged.**

The giving of a new note by the original parties by way of renewal preserves the debt and the rights of the creditor to the property pledged, though the contract of pledge is not renewed.

**2. Payment ⬥⇒16(1)—Acceptance of note from joint obligor liable for pre-existing debt not payment as to other joint obligors.**

In the absence of an express agreement to the contrary by the creditor, the acceptance of the note of one or more joint obligors bound for a pre-existing debt is not a payment thereof, and does not release other joint obligors who did not sign such note.

**3. Partnership ⬥⇒236—Renewal note from new firm held not to discharge retiring partner in absence of express agreement.**

Notwithstanding a creditor has notice of the dissolution of a debtor partnership and the changed relation of the former partner resulting therefrom, in the absence of assent the taking of a renewal note from the new firm does not discharge the retiring partner from liability for the debt unless the creditor expressly agreed that it should have such effect.

**4. Partnership ⬥⇒236—Renewal note by mistake not signed by retiring partner held not to release such partner's collateral.**

Where a partner deposited money in a bank in her own name, pledging the passbook as collateral for a note signed by herself and her partner for funds used in the partnership, and a renewal note, signed only by the remaining partner after dissolution of the partnership, was given, but it appeared that the bank neglected to secure the signature of both partners through an oversight, and did not intend to release the retiring partner or her collateral, the bank had a right to apply the deposit to the satisfaction of the unpaid balance for which the deposit was pledged.

Error to Court of Civil Appeals of Fifth Supreme Judicial District.

Action by V. S. Watson, as next friend for Fredrick Chester Selby, Jr., a minor, against the First State Bank of Dallas. Judgment for defendant was affirmed on appeal (223 S. W. 233), and plaintiff brings error. Affirmed as recommended by the Commission of Appeals.

McCutcheon & Church, of Dallas, for plaintiff in error.

Thomas, Milam & Touchstone, of Dallas, for defendant in error.

GALLAGHER, J. Plaintiff in error, V. S. Watson, as next friend for Fredrick Chester Selby, Jr., a minor, brought this suit against defendant in error, First State Bank of Dallas, to recover $2,108.35, with interest from January 23, 1918.

Two thousand dollars of this money had been deposited in the savings department of the bank by Mrs. Stevie Selby, mother of the minor, in her own name, on March 21, 1917, and the passbook therefor pledged in writing to the bank as collateral security for a note of even date, payable to the bank and signed by W. H. Elsberry and said Mrs. Stevie Selby for the sum of $2,500. The purpose in executing this note was to procure funds to enable the makers to engage in business as partners under the firm name of Southern Hardware Company. The proceeds of the note were immediately deposited in the bank in such firm name. This account was from time to time increased by deposits and reduced by checks drawn in the firm name by one or the other of the partners. The note and pledge contract were renewed on June 1, 1917, by both the original makers signing as individuals. The partnership was dissolved on the 1st of August, 1917, Mrs. Selby retired, and Elsberry assumed the liabilities, and continued the business in the firm name. About August 28, 1917, this debt was renewed by a new note in the sum of $2,300, the balance then due. The renewal note signed only by Southern Hardware Company and W. H. Elsberry was taken to the bank by Mrs. Selby, and she at that time told the bank that the partnership had been dissolved. This note was not accompanied by a renewal contract of pledge. It was accepted by the bank, and the former note surrendered. Nothing was said at the time about the pledge. The debt was again renewed on November 28, 1917, by a new note, signed as the preceding note was signed. Mrs. Selby is not shown to have known of this renewal at the time.

Just before this note became due Mrs. Selby, who had married the plaintiff in error, joined by her said husband, conveyed the funds theretofore pledged to the bank as security for this indebtedness, to her said minor son, claiming that such funds belonged to him as his share of money collected on account of the death of his father, her former husband. Demand was made on the bank in the name of the minor for the original deposit and accumulated interest in the sum sued for. The bank refused the demand and applied the money as a credit on the note of November 28, 1917.

There was a trial by jury on special issues. The verdict found the material facts above stated, and further found:

(a) That the money on deposit did not belong to the minor.

(b) That Mrs. Selby did not agree that such deposit should be held by the bank as

security for the said third and fourth notes signed in the firm name and by Elsberry alone, and did not so intend, but that she did not, prior to January 24, 1918, give any notice to the bank that she did not regard the funds and passbook held by it as an existing, subsisting pledge for the original debt.

(c) That the absence of the name of Mrs. Selby from the renewal notes was an oversight on the part of the officials of the bank, and that they did not intend to extinguish the original indebtedness, or to release her from liability thereon, nor to release the funds on deposit, and the passbook for the same, from the original pledge to secure such indebtedness.

The court, on the evidence and finding of the jury, rendered judgment for the defendant in error, and such judgment was affirmed on appeal. 223 S. W. 233. The Supreme Court granted a writ of error.

There was no evidence that the bank was notified that Elsberry had assumed the liabilities of the firm on its dissolution. Mrs. Selby testified that she told an official of the bank that her name was not signed to the third note which was delivered by her, and he said that did not make any difference, but this conversation was denied, and inasmuch as the trial court rendered judgment for the defendant in error, we are required to presume that he solved all conflicts in the evidence on material issues in its favor. Rev. Stats. art. 1985.

The issue presented for determination by this court is whether, under the facts above stated, acceptance by the bank of the third and fourth notes without the signature of Mrs. Selby and without a renewal of the written contract of pledge released such pledge as security for such indebtedness.

[1] The giving of a new note by the original parties by way of renewal preserves the debt, and the rights of the creditor to the property pledged, though the contract of pledge is not renewed. 8 C. J. p. 443, § 656, and page 442, § 654; 31 Cyc. p. 852; Hardie v. Wright, 83 Tex. 345, 348, 18 S. W. 615.

[2] In the absence of an express agreement to the contrary by the creditor, the acceptance of the note of one or more joint obligors bound for a pre-existing debt is not a payment thereof, and does not release other joint obligors, who did not sign such note. 30 Cyc. 1202; 21 R. C. L. p. 76, § 78; White et al. v. Boone, 71 Tex. 712, 714, 12 S. W. 51; Tyner v. Stoops, 11 Ind. 22, 71 Am. Dec. 341, 346; Valade v. Masson, 135 Mich. 41, 44, 97 N. W. 59; Ward v. Howe, 38 N. H. 35; Schollenberger v. Seldonridge, 49 Pa. 83; Bowers v. Still, 49 Pa. 65, 72; Jones v. Johnson, 3 Watts & S. (Pa.) 276, 38 Am. Dec. 760; Patapsco Ins. Co. v. Smith, 6 Har. & J. (Md.) 166, 14 Am. Dec. 268; Muldon v. Whitlock, 1 Cow. (N. Y.) 290, 13 Am. Dec. 533.

This situation arises most frequently in cases of partnership, and, when one partner retires and the other partner or partners continue the business, take the assets of the former firm, and assume its liabilities, it is held with practical unanimity that between the former partners themselves the continuing partner or partners become the principal debtors, and the retiring partner becomes a surety only. 20 R. C. L. p. 987, § 223; White et al. v. Boone, 71 Tex. 712, 714, 12 S. W. 51. The authorities are not, however, in accord with reference to the effect of such situation upon the creditor. It is held in some jurisdictions that, when the creditor has notice of the dissolution of the firm and the changed relations resulting therefrom, he is bound to respect them, and that the acceptance thereafter of a renewal note extending the time of payment without the consent of the retiring partner will discharge him from further liability. Colgrove v. Tallman, 67 N. Y. 95, 23 Am. Rep. 90; Smith v. Shelden, 35 Mich. 42, 24 Am. Rep. 529. The weight of authority, however, supports the rule that the creditor is not bound to recognize such changed relations unless he expressly assents thereto, and such rule has been adopted by our Supreme Court. Shapleigh Hardware Co. v. Wells & Chestnut, 90 Tex. 110, 37 S. W. 411, 59 Am. St. Rep. 783.

[3] Therefore in this state, notwithstanding a creditor has notice of the dissolution, and the changed relation of the former partners resulting therefrom, in the absence of such assent the taking of a renewal note from the new firm does not discharge the retiring partner from liability for the debt unless the creditor expressly agrees that it shall have such effect. White et al. v. Boone, supra. There is an extensive list of authorities on this point cited in note to Grubbe v. Pierce, Ann. Cas. 1915C, 1204, to which we refer in support of this proposition.

Our Supreme Court held in the case of Slaughter v. Owens, 60 Tex. 668, 672, that as long as a debt continues and can be enforced, a vendor's lien securing the same subsists and can be foreclosed. In the case of Wilcox v. National Bank, 93 Tex. 322, 331, 55 S. W. 317, 319, the court said:

"A lien created by mortgage or by an express reservation exists as long as the debt exists which it secures, unless it be discharged by some valid agreement between the parties. A debt for which a new promise or obligation, with a new security is given, is not of necessity and by that fact alone extinguished; and hence a mortgage by which it is secured is not extinguished, unless the parties agree that the new promise is to be taken as a payment of the debt, or that the new security is given in lieu of the old and in discharge of it."

In the case of Willis v. Sanger, 15 Tex. Civ. App. 655, 664, 40 S. W. 229, 233 (writ refused), the court said:

" 'No change in the form of indebtedness or in the mode or time of payment will discharge the mortgage. A mortgage secures a debt, and not the note or other evidence of it. No change in the form of the evidence, or the mode or time of payment, nothing short of actual payment of the debt, or an express release, will operate to discharge the mortgage.' [Jones on Mortgages] § 924."

In Flewellen v. Cochran, 19 Tex. Civ. App. 499, 48 S. W. 39 (writ refused), the court held that the vendor's lien was merely an incident to the debt, and that the debtor could make a valid extension of the debt after he had conveyed the land charged with the lien to another, and that such extension preserved the lien and kept it enforceable against the land as against a plea of limitation.

The rights of a lienholder and a pledgee are in most respects subject to the same rules. Luckett v. Townsend, 3 Tex. 119, 130, 49 Am. Dec. 723.

[4] There is no contention that the bank expressly agreed that Mrs. Selby should be regarded as surety, or that the taking of the renewal notes of Elsberry should release her from the debt, or release her collateral pledged for its payment. No such agreement can be implied because the jury found that the taking of such renewal notes without her signature was an oversight and was not intended by the bank to release either her or her collateral. We think under the authorities cited that the bank had a right to apply such deposit to the satisfaction of the unpaid balance of the debt for which it was pledged, notwithstanding its inadvertent acceptance of renewal notes not signed by Mrs. Selby.

Bank v. Trustees of Masonic Hall, 62 Ga. 271, 282–284, is cited and relied on by plaintiff in error to sustain his contention in this case. In that case one Butt was in possession of certain bonds belonging to the trustees of the Masonic Hall. He delivered them to the bank to secure certain indebtedness without the knowledge or consent of the owners. There was a long account between him and the bank running through several years, and embracing many notes, some of which were paid and others renewed. The firm of which Butt was a member changed partners once or twice. The new, as well as the old, firm borrowed money from the bank through him. Butt withdrew the bonds from time to time, collected the coupons, and deposited them in the bank to the credit of the owners and then returned the bonds to the bank. The bank finally refused to surrender the bonds and claimed to be a pledgee in good faith without notice that the bonds did not belong to Butt.

The court charged the jury that the holder of collateral could retain it only so long as the debt was unpaid, and that, though the bank did not have notice of Butt's lack of title at the time the bonds were first delivered to it, yet if the debt for which they were first hypothecated was paid, and they were afterwards hypothecated for other debts of other firms of which Butt became a member, and if the bank, before the second hypothecation, got notice of such lack of title, it would not be protected in its claim of bona fide holder. The jury found in favor of the trustees, and the bank appealed. The Supreme Court approved the charge and held there was evidence warranting its submission and sustaining the verdict rendered.

We understand that case to hold that whether the debts to secure which the bonds were originally deposited were paid, and whether the debts for which the bank was attempting to hold the bonds were contracted after notice of Butt's lack of title to the bonds, were questions of fact to be determined by the jury from the evidence. So construed, that case is not in conflict with the conclusions above announced.

Bank of Paducah v. Smith, 1 Ky. Law Rep. 351, 10 Ky. Opinions, 734, also cited and relied on by plaintiff in error, was a case in which Smith owned certain bonds and deposited them as collateral security for loan to the firm of Corbett & Peterson alone. The bank had knowledge of the facts, and thereafter the succeeding firms of Corbett, Peterson & Co. and Peterson, Gardner & Ryan were permitted successively to renew the original loan by giving their respective notes therefor. Such renewals were without the knowledge or consent of Smith. The court held that the bank could not hold Smith's bonds to secure the renewal note of Peterson, Gardner & Ryan. We infer from the brief report of this case that Smith was not a party to the original debt. If so, he occupied the position of a surety and was entitled to stand on the letter of his contract, and the court properly held that his bonds were released from liability for the debt. Jones on Collateral Security, § 517a.

We recommend that the judgment of the Court of Civil Appeals in this case be affirmed.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.