# STOCKMEN'S GUARANTY LOAN CO. v. SANCHEZ.

[No. 2253.   Sept. 2, 1920.]

[Rehearing Denied Jan. 27, 1921.]

### SYLLABUS BY THE COURT.

1.  Sections 939 and 940, Code 1915, interpreted and **held** not to prohibit a corporation from taking a promissory note upon a subscription contract for its capital stock, and that such note is valid and binding upon the maker.      P. 503

2. Evidence examined, and **held** not to support an allegation of fraudulent representations inducing a stock subscription.                                                                                  P. 505

3.  The payment of the purchase price, in pursuance of the terms of a subscription contract for corporate stock and the receipt of benefits from the corporation, after the discovery of alleged fraudulent representations inducing the subscription contract, establishes an affirmance of the contract and destroys the right to rescission.                                   P. 505

4.  A person who executed a subscription contract for stock in a corporation when he is under influence of liquor, but who subsequently, when he is sober, does acts which clearly recognize the contract as valid, and shows an intention to be bound by it, affirms the contract, and thereby destroys his right to rescind on account of drunkenness.                            P. 506

Appeal from District Court, Bernalillo County; Raynolds, Judge.

Action by the Stockmen's Guaranty Loan Company against Severo Sanchez. Judgment for plaintiff on a directed verdict, and defendant appeals. Affirmed.

RODEY & RODEY, of Albuquerque, for appellant.

BURKHART & COORS, of Albuquerque, for appellee.

### OPINION OF THE COURT.

PARKER, C. J. This is an appeal from a judgment against appellant upon a directed verdict in the district court of Bernalillo county. The action was upon three promissory notes, two of which were given to cover the purchase price of certain shares of stock in the appellee corporation, and one of which was for borrowed money. The appellant filed an answer and counterclaim, and alleged, in substance, that there was fraud in the procuring of said notes, that he was mentally incapacitated at the time of the execution of said notes, that there was a failure of consideration, that the appellee had failed to exhaust its remedies against collateral pledge to secure the payment of said notes, and that the appellant had paid $1,500 upon his stock subscription for the appellee's stock, which he desired to recover. It appeared in the testimony that in October, 1915, the agents of the appellee corporation solicited appellant to purchase stock in said corporation, and that on the 20th of October he subscribed in writing for 2,500 shares of stock of the appellee corporation and gave his two promissory notes, one in the sum of $1,250, due in 20 days, and one in the sum of $3,750, due 1 year from date. On the same day he borrowed from the corporation $400 and gave his note therefor. The $1,250 note, given on October 20th, became due on November 9th, and was not paid at maturity by reason of the fact that appellant was not able to pay the same. On December 3d he left his ranch, entirely sober, for the purpose of coming to the office of the appellee corporation in Albuquerque to arrange his payments upon his stock subscription, so as to give him more time, if possible. After arriving in town he met an agent of the appellee corporation and

had several drinks with him, after which, while he was somewhat intoxicated, they went up to the said office, where he signed a new application for stock in place of his former application. His subscription at this time was for the same number of shares and at the same price per share as his former application of October 20th.

Upon the execution of the renewal subscription on December 3d, he gave appellee the notes for $2,000 and $1,500 sued on in this action, which were to become due one year from that date. He also gave the corporation one $500 note, which was to be due June 1, 1916, and a check for $1,000. Payment of the check of $1,000, which he gave on December 3, 1915, he stopped, because, as he testified, the company had not fulfilled the promises of its agents, and because he had lost confidence in the company. After having stopped the payment on this $1,000 check, he later, on December 7, 1915, gave four $250 checks to the appellee corporation in place thereof, and afterwards again stopped payment on the checks, or at least two of them, giving the same reason therefor that he had previously given for stopping payment upon the $1,000 check. He afterwards gave a note for $500 in place of two of the $250 checks, and paid the other two $250 checks. On July 20, 1916, he paid the $500 note, given on December 3d, and subsequent thereto paid the $500 note given to take up the $250 checks. On August 21, 1916, he again procured a loan from the appellee corporation in the sum of $300, giving his note therefor. The appellant's own testimony shows that he was somewhat intoxicated on December 3, 1915, but that at all other times, when he made the original subscription in October, 1915, and at the other times after he discovered the alleged fraud of the appeellee, and when he secured extensions of time for payment, when he gave new checks and new notes, when he made new promises to pay and made frequent payments, and when he secured loans from the appellee, he was entirely sober. At the close of the appellant's testimony the court, upon motion, directed a verdict for the appellee, and rendered judgment thereon.

[1] Appellant argues that no recovery can be had upon the notes given at the time of the subscription for the stock and evidencing the subscription price thereof, by reason of a prohibition contained in section 939, Code 1915, the pertinent provisions whereof are as follows:

"Nothing but money shall be considered as payment of any part of the capital stock of any corporation organized under this article, except as hereinafter provided in case of the purchase of property."

Section 940, Code 1915, provides that property may be taken by a corporation and its stock issued therefor in an amount equal in value to the property. It is to be observed that the language of section 939 contains no prohibition of the issuance of stock without payment of the subscription price, and contains no prohibition of the issuance of stock and the taking of notes in settlement of the subscription price. The provision is that nothing but money shall operate as a payment of the subscription price of stock in a corporation. In these particulars our statute differs from that of most of the states, except New Jersey, whence our statute comes. Section 939, supra, is copied bodily from the corporation act of New Jersey, in which these provisions appear as section 48 of the New Jersey act (2 Comp. St. N. J. 1910, p. 1630). In that state, so far as we are advised, no specific interpretation of the provisions of this section has been had. This section, however, required no interpretation and needs simply to be read according to its plain language. That language does not prohibit the taking of a note for a stock subscription, and does not invalidate stock issued under such circumstances, but simply provides that the stock issued is not to be considered as paid for until it is in fact paid for in money or property. The fact that upon the taking of a note for a stock subscription the payment is delayed is no objection, because another section of our corporation act expressly contemplates that payment for stock may be deferred and the money brought in from time to time by assessment in the discretion of

the board of directors.   See section 908, Code 1915.
The provisions of the section are in accordance with
the general principle of law to the effect that no promise
to pay money is to be considered as payment, unless
the parties so agree at the time.

In some of the states payment for stock in notes or
bonds is expressly prohibited by statutory provisions.
In some states the statute provides that no note or obli-
gation given by a subscriber shall be considered as pay-
ment of any part of the capital stock.   Under such a
statute it is held that, when such a note is given, the
provision merely means that the note shall not in law
effect a payment, so as to relieve the purchaser or sub-
scriber from his obligation to pay, and does not operate
to prevent the corporation from taking a note for stock,
or to invalidate a note so taken, or to relieve the maker
thereof from the obligation to pay it.   German Mercan-
tile Co. v. Wanner, 25 N. D. 479, 142 N. W. 463, 52
L. R. A. (N. S.) 453, is an example of such holding.   In
some states the provision is that no corporation shall
issue stock except for labor done, services performed,
or money or property actually received.   In those states
it is held that this provision does not prohibit the taking
of the note of the subscriber, for the reason that such
note is property.   Pacific Trust Co. v. Dorsey, 72 Cal.
55, 12 Pac. 49, Quartz Glass Mfg. Co. v. Joyce, 27 Cal.
App. 523, 150 Pac. 648, and Meholin v. Carlson, 17 Idaho
742, 107 Pac. 755, 134 Am. St. Rep. 286, are exam-
ples of such holding.   Other courts hold, under a similar
provision, that a corporation may not issue its stock
and take in payment therefor a note of the subscriber,
but holds that the note is valid where the stock is not
actually issued or delivered to the subscriber, since, un-
der such circumstances, the note is but another form of
evidence of the agreement to pay the subscription.   Com-
mercial Guaranty State Bank v. Crews (Tex. Civ. App.)
196 S. W. 901.   In this connection see 5 Fletcher's Cyc.
Corporations, §§ 3513 and 3514, where all of the au-
thorities on this specific subject seem to be collected.
It follows from the foregoing that the notes sued on

were entirely valid, and were not open to the objection made by counsel for appellant.

[2] Appellant argues that there was fraud in obtaining the stock subscription and notes. He bases the contention upon two propositions: (1) The agents who sold him the stock did not disclose that preferred stock was authorized by the charter; (2) the agents represented that the corporation would loan appellant money at from 4 to 6 per cent., which they failed to do.

As to the first proposition, the evidence of the appellant shows that the selling agents did disclose the fact that preferred stock was authorized by the articles of incorporation.

As to the second point, the evidence of appellant and his brother-in-law shows that the representation was that money would be loaned at from 4 to 6 per cent. on notes secured by livestock or ranch property, and it appears that no application for loans secured in this manner was made by appellant. The loans he secured were all made upon his personal note, without security, and he was charged from 8 to 10 per cent. There was, therefore, no proof of fraudulent representations.

[3] Even assuming that all of the facts in evidence and all of the inferences to be drawn therefrom did show an overreaching by appellant bordering upon or even showing, fraudulent representations, still the appellant is in no position to avail himself of the same. As appears from the facts heretofore recited, the subscription contract and notes were executed on December 3, 1915. Thereafter up until August 20, 1916, appellant had frequent dealings with appellee, making payments of portions of the subscription price, and borrowing money from time to time from the appellee. If he had been defrauded, he was aware of the fact, but elected to proceed with the purchase and to avail himself of the right to borrow money from the appellee. Under such circumstances, the right to rescind was lost. The cases are collected in 9 C. J. Cancellation of Instru-

ments, §§ 77, 78, and 79. The payment of the purchase price and the receipt of benefits after the discovery of the fraud are among the acts prominently mentioned in the cases as clearly establishing affirmance. In 3 Elliott on Contracts, § 2430, it is said:

"Any acts of recognition of the contract, or any transaction with the defendant relating to the subject-matter thereof, with knowledge of the fact and inconsistent with intention to rescind, will, in general have the effect of affirming the transaction."

See 6 Fletcher's Cyc. of Corporations, § 3882, where the cases are also collected and commented upon. See, also, Elliott v. Brady, 192 N. Y. 221, 85 N. E. 69, 18 L. R. A. (N. S.) 600, 127 Am. St. Rep. 898. The record showing affirmance on the part of the appellant, he cannot now rescind the contract.

[4] The same principle applies to the proposition in regard to the appellant's alleged intoxication on December 3, 1915, when he executed the subscription contract and the notes sued on. Assuming that the appellant was slightly under the influence of liquor at the time, the evidence falls far short of showing that he was so intoxicated as to be incapable of knowing what he was doing, which seems to be the extent of intoxication required to avoid a contract entered into by a drunkard. 6 R. C. L. Contracts, § 18. But, assuming that the appellant was incapacitated by drunkenness at the time of the execution of the subscription contract and the notes, he nevertheless ratified his act by the numerous subsequent acts of affirmance between that time and the following August, at which times he was duly sober, so far as appears from the record. Upon this subject it is stated in 1 Elliott on Contracts, § 444, that the universal rule is as follows:

The voidable contracts of an intoxicated person may be ratified by him when he becomes sober, and, if so ratified, they become binding upon him and may be enforced. This may be done by any act which clearly recognizes the contracts as valid and shows an intention "to be bound by it, or it may be done by a failure to disaffirm within a reasonable time."

It follows, from all the foregoing, that the action and judgment of the court below were in all respects correct, and that the judgment should be affirmed; and it is so orderd.

ROBERTS, J., concurs.

RAYNOLDS, J., did not participate, having tried the case below.