### JOHN T. HARDIE & CO. v. C. P. WRIGHT ET AL.

#### · No. 3223.

1. **Negotiable Note—Defense Against.** —The plaintiffs sued on a negotiable note alleged to have been indorsed to them before maturity and for valuable consideration. In defense it was pleaded that the note was without consideration, etc. *Held*, that a recovery by a bona fide holder of such paper acquired before its maturity can not be defeated by proof of such facts.

2. **Written Contract Not Altered by Parol.** —A writing was produced executed by the payee named in the note sued upon, showing that it and other promissory notes described had been indorsed and delivered to the plaintiffs as collaterals to secure an indebtedness described from the payee to the plaintiffs. *Held*, error to permit the officer making the indorsement for the payee, a corporation, to prove other and different conditions relating to the matter in such writing. See facts.

3. **Fact Case.**—See facts held insufficient to show a payment or satisfaction of an indebtedness secured by the note sued on as collateral. It was error to withdraw such issues from the jury by an instruction to find for the defendant.

APPEAL from Dallas. Tried below before Hon. R. E. BURKE. The opinion states the case.

*C. Bradford* and *Cobb & Avery*, for appellants.— 1. The allegations of defendants' answer as to the agreement upon which the note sued on was given contradicted and varied the terms of the note sued on, and the demurrer to so much of said answer should have been sustained. Brown v. Spofford, 5 Otto, 474, and authorities cited.

2. Where the maker of a promissory note, negotiable or non-negotiable, recites on the face of it that he has received a particular consideration for the same, and this note is transferred for value to one having no notice other than as appears on the face of the note, said maker is estopped to deny that he had not received the consideration as stated by him. Colebrooke on Col. Sec., sec. 435, and authorities cited; Bige. on Estop., 4 ed., pp. 540, 541, and authorities cited.

3. Where notes are pledged as collateral by a written contract of pledge defining the rights and duties of the parties, parol evidence is not admissible to explain, contradict, or vary the terms of the writing. Colebrooke on Col. Sec., sec. 86, and authorities cited.

4.   The court erred in admitting in evidence over plaintiffs' objection the depositions of defendants T. G. Marley, Charles Hughes, C. C. Tillar, J. P. Busby, P. McKellar, C. B. Shirley, T. F. Hubbard, D. R. Cunningham, J. C. Broden, T. J. Cox, J. S. Mooney, J. A. Ball, and H. C. Back, to the effect that the note sued on was without consideration; and the court erred in overruling plaintiffs' motion to strike out the above evidence, for the reason that the evidence showed that the note sued on was given as collateral security for a debt which had not been paid, and said evidence was irrelevant and immaterial. The evidence of these witnesses also varied the terms of the note sued on, and should have been excluded.   Brown v. Spofford, 5 Otto, 474, and authorities cited.

*Robertson & Coke,* for appellees.—1. The undisputed testimony shows that the debt for which the note in suit was delivered to Hardie & Co. had been paid, or had, by subsequent transactions between Hardie & Co. and the Farmers Alliance Exchange, become so confused with their other demands against the said Farmers Alliance Exchange as to be unsusceptible of identification.   Bank v. Blocker, 77 Texas, 73.

2.   At the date of the settlement made by Mr. Gray between Hardie & Co. and the Farmers Alliance Exchange the debts were consolidated. The payment then made was credited upon the whole demand and a note taken for the balance, in which the separate debts were not discriminated, and a new agreement was then made reserving all the collateral security for the payment of the entire balance of the debt.   Said agreement was made after the maturity of the note sued on and was a new hypothecation thereof, so that the plaintiff became a holder after maturity, and the appellees' defenses against the payee were admissible against the plaintiff.   Colebrooke on Col. Sec., sec. 95.

STAYTON, CHIEF JUSTICE.—Appellants brought this action on the following promissory note:

"No. 3186.                                                          $2118.

"On or before the 15th day of November, 1888, we or either of us promise to pay to the Farmers Alliance Exchange of Texas or order, for value received, the sum of $2118.   This note is given in payment for goods, wares, and merchandise purchased for us and shipped to T. J. Cox, trustee, Gonzales, and is payable in the city of Dallas, Texas.

"Given under our hands at Canoe Creek Alliance, in the county of Gonzales, State of Texas, this the 15th day of April, A. D. 1888."

This was signed by the defendants; and the petition alleged that for valuable consideration the Farmers Alliance Exchange of Texas before its maturity indorsed it to plaintiffs, and that they had no notice of any fact that would invalidate the paper.

Appellees pleaded a general denial; that the note was held by appellants as collateral security for a debt due to them by the indorser which had been paid or had lost its identity; and further, that the note was without consideration. The substance of this last plea was, that the note was given to the exchange to secure the payment for merchandise thereafter to be furnished the makers by the exchange, and that upon the maturity of the note the makers were to be liable only for the value of merchandise furnished; and if none were furnished the makers were liable for nothing and the note was to be returned, and that no merchandise was ever furnished the makers and no liability accrued. No notice of these facts was alleged against plaintiffs. Plaintiffs specially excepted to so much of the answer as sets up a want of consideration, and the understanding and agreement between the makers of the note and the exchange, (1) because it has not alleged that plaintiffs had any notice of the facts therein alleged, and (2) because the facts alleged contradict and vary the terms of the written note sued on.

The court overruled the special exception. This was error, which led to the further error of admitting evidence to prove such an agreement between the exchange and defendants as was alleged; and that no goods were delivered under it. The right of a bona fide holder of such paper, acquired before its maturity, could not be defeated by proof of such facts.

It was proved by writing signed by the Farmers Alliance Exchange of Texas, by its president, C. W. Macune, and otherwise, that on July 19, 1888, that corporation bought from appellants 248 shares of the capital stock of the Texas Elevator and Compress Company, for which it executed to them its four promissory notes, one for $9200, due November 15, 1888; another for $10,000, due January 1, 1889; another for $9000, due November 15, 1889; and another for $9000, due January 1, 1890; and to secure these gave a mortgage with power to sell this stock and apply the proceeds to the payment of these notes in the event they were not paid at maturity; and the instrument contained the further agreement, that on failure to pay any one of the notes at maturity, all should become due at the election of Hardie & Co. To further secure these notes, the corporation by the same instrument placed in the hands of Hardie & Co., first having indorsed the same, twenty promissory notes held by it, among which was the note sued on, all of which the instrument empowered Hardie & Co. to collect as they matured and the proceeds to apply to the corporation's notes before referred to; but this instrument provided that these notes placed as collateral security should be returned to the corporation if the first of the notes given for stock was paid.

On the same day these transactions occurred the same parties had another, which was also evidenced by an instrument in writing, from which it appears that the corporation executed to Hardie & Co. three

other promissory notes, one for $5000, maturing September 1, 1888; another for $5000, maturing September 15, 1888; and another for $7500, maturing October 1, 1888.   These notes were for money loaned and for bagging and ties sold by Hardie & Co. to the corporation, and to secure their payment it deposited as collateral security a large number of other notes, aggregating $40,020, definite proportions of which it was provided should be returned to the corporation as it should pay each of the three notes.

One of the plaintiffs testified as follows:   "The largest amount owed my firm by the exchange was in October, 1888, and was $54,700, evidenced by the seven notes above; part of this debt has been settled, but there is still due about $8000. No part of the note sued on has been paid or settled.   On February 5, 1889, there was due on the $9200 note maturing November 15, 1888, a balance of about $8000.   The failure to pay said $9200 note matured the other three notes mentioned in exhibit A.   On February 5, 1889, my firm bought back the compress stock, and after crediting the indebtedness of the exchange with this and the amounts collected on the collateral notes there remained a balance of $13,700, for which the exchange executed its note for $13,700, due April 1, 1889, and still leaving in possession of my firm all the collateral notes. The exchange still owes us about $9000."

C. W. Macune testified as follows:   "I was manager of the Farmers Alliance Exchange of Texas from August, 1887, to January, 1889.   The note sued on was placed with Hardie & Co. along with other notes aggregating $29,000, given by the exchange to John T. Hardie & Co. The consideration for the three notes given Hardie & Co. was as follows:   One note for $10,000 for money loaned; one note for $10,000 for bagging and ties; and one note for about $9000 was in part payment for compress stock.   The exchange did not owe Hardie & Co. any debt except as above stated.   The debt for compress stock was evidenced by several notes given by the exchange to Hardie & Co. The first of these was for about $9000, and it was expressly understood and agreed between the exchange and Hardie & Co. that neither the note sued on nor any of the notes placed with Hardie & Co. as collateral were to be in anywise held for any of the compress notes except said $9000 note; this $9000 note was first of the compress notes to mature.   It is not true that the notes sued on and the other collaterals were placed with Hardie & Co. to secure any and all indebtedness which the exchange owed Hardie & Co.   Wm. T. Hardie accepted the collaterals with the first maturing compress note only."

Defendants were permitted to prove that they received no consideration for the note sued upon.

Edward Gray testified: "On February 5, 1889, I was an attorney in Dallas, and represented Hardie & Co. in the settlement with the exchange.   At that time Hardie & Co. had declared all the notes held

by them against the exchange due, and had advertised the compress stock for sale and brought suit on all the notes in the Federal court. At that time there was due on all the notes about $42,700, which included $2500 attorney fees. The notes provided for 10 per cent attorney fees, but I only charged $2500. At that time a settlement was made between Hardie & Co. and the exchange. Hardie & Co. took back the compress stock at a valuation of $31,000, which was $6000 less than it had been sold to the exchange for. After crediting the $42,700 there still remained a balance of $13,700, for which the exchange gave its note for $13,700, due in three or four months, and by agreement all the collaterals in Hardie & Co.'s hands were retained by them to secure this $13,700.

Chapman Bradford testified: "This $13,700 note was placed in my hands for collection. I collected about $500 out of the collaterals mentioned in exhibit B, but nothing from the collaterals mentioned in exhibit A. I took a tract of land from the exchange, and by agreement the $13,700 note was credited with $4500 for this; after applying these credits there remained a balance of about $9000, for which I brought suit and recovered a judgment against the exchange. This is all that has been paid on this note."

This judgment was then introduced, and was a judgment in favor of Hardie & Co. against the exchange for $9029.69 and costs, and bearing 10 per cent interest from its date, December 14, 1889.

J. B. Reilly testified: "I was secretary of the Farmers Alliance Exchange from October 1, 1887, to February 15, 1889. A lot of notes was delivered by the exchange to Hardie & Co. as collaterals to secure the payment of one note for about $10,000 for borrowed money; another note for about $9000 for bagging and ties, and another note for about $9250, being the first payment on compress stock. The first note for $10,000 was paid in full; the second note for $9000 was paid except a small balance; the last note for $9250 was not paid."

Under this evidence the court instructed the jury to return a verdict for defendants, which was done, and judgment was entered in pursuance of it.

The genuineness of the written instrument signed by Macune, the manager of the corporation, and duly acknowledged, is not questioned; and that the note sued upon, with others, was thereby placed in the hands of Hardie & Co. as collateral security for all the notes given for compress stock, and not only for the one first maturing, is clear. This view is sustained by other evidence. Macune, however, states that the notes named in that instrument were placed as collateral to secure the payment of only one of the notes given for compress stock, and witness as well as Reilly stated that the note so secured was the one first maturing, though neither of them, testifying from memory, were able to state correctly the amount of that note. Macune and Reilly

agree in the statement that the note sued on and other notes were placed as collaterals to secure a note for $10,000 executed to Hardie & Co. for borrowed money and a note for bagging and ties, but neither of them was able to state correctly the amount of these notes, if the written agreement signed by Macune to evidence the transaction with reference to them speaks the truth. That agreement shows that two notes, each for $5000, instead of one for $10,000, were executed to Hardie & Co. for borrowed money, and that another note was executed to them for $7500 for bagging and ties, and that these notes were secured by the deposit of notes entirely different from those deposited as collateral to secure the payment of the notes given for compress stock. Reilly states that the notes given for borrowed money and bagging and ties were paid except a small balance, but that the note first maturing and given for compress stock was never paid.

The testimony of the plaintiff who testified, and that of the witness Gray, tends to show that at the time of the trial there was due from the corporation to Hardie & Co. $9029.69, with interest thereon from December 14, 1889, on the debt created in the purchase of the compress stock. It tends to show, if it does not conclusively show, that the note sued on was placed with Hardie & Co. as collateral to secure not only one but all the notes given for the compress stock, and that this occurred before the note matured. If the testimony of the witness for the plaintiff, the written contracts between the parties, and the testimony of Reilly be entitled to credence, the debt now due to Hardie & Co. is for the balance on purchase of the compress stock; and so long as this remains unpaid their right to enforce the collateral given to secure its payment can not be defeated on the ground that the consideration for the collateral as between its makers and the corporation failed.

If Hardie & Co. had received the note sued upon after its maturity, they would hold it subject to equities existing between the parties to it. If the debt for which it was deposited as collateral had been paid, Hardie & Co. could not enforce it to satisfy some other debt the corporation might owe them; but it seems to us that the preponderance of the evidence favors the proposition that the note sued on was deposited before its maturity with Hardie & Co. as collateral security for a debt still unpaid. But did the record show a case in which the evidence upon the vital issues was simply conflicting, then we would have a case in which the court would not be authorized to instruct the jury to bring in a verdict for defendants. The evidence of Macune contradictory of the written agreement through which the note sued on was transferred to Hardie & Co. as collateral security ought not to have been received.

It is evident that the $13,700, on which there is a balance of more than $9000 still due, is a part of the debt created by the corporation in the purchase of the compress stock, and it can not be claimed when this was repurchased by Hardie & Co. for $31,000 that it was the in-

tention of the parties that the right to hold the collaterals to secure one or all of the notes for compress stock was surrendered. The purpose in taking the notes as collateral security was to give additional security to that given by the stock itself, and the parties can not be presumed to have intended to surrender such security on the repurchase of the stock for a less sum than was due for it. If the note first maturing and given for compress stock had been paid the corporation would have been entitled to a surrender of the collateral notes; but according to the evidence this was not done, and it can not be claimed under the evidence that in the appropriation of payments this was done or ought to have been done.

The court erred in the charge in admitting the testimony of Macune referred to and in refusing to grant a new trial, and its judgment will be reversed and the cause remanded.

*Reversed and remanded.*

Delivered February 12, 1892.