COMMERCIAL GUARANTY STATE BANK v. CREWS.

(Court of Civil Appeals of Texas. Beaumont. June 22, 1917.)

1. CORPORATIONS ⊂═99(1)—STOCK—ISSUE OF OR SUBSCRIPTION FOR.

Where the company had never been incorporated, and the stock was not to be delivered until the notes were paid, notes, reciting that they were given for stock in the company, were not given for stock issued in a corporation, within the meaning of the Constitution and statutes making notes so issued invalid.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 444.]

2. BILLS AND NOTES ⊂═342—NOTICE OF DEFENSES—EVIDENCE.

Recital in a note that it is one of a series given for stock in the S. Company did not give purchaser notice of any defenses that could be urged against the original payees.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 830–841.]

3. BILLS AND NOTES ⊂═327—INNOCENT PURCHASER.

One who, without knowledge or information of any defense against the original holder, purchases a note for value before maturity, is protected as an innocent holder.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. § 792.]

Appeal from Nacogdoches County Court; J. F. Perrette, Judge.

Suit by the Commercial Guaranty State Bank against H. C. Crews. Judgment for defendant, and plaintiff appeals. Reversed and rendered.

Blount & Strong, of Nacogdoches, for appellant. S. M. Adams, of Nacogdoches, for appellee.

KING, J. Appellant brought this suit in the county court of Nacogdoches county on two promissory notes executed by appellee, of date June 2, 1913, for the sum of $100 each, payable to B. F. Moore and J. C. Marshall, or order, and due November 1, 1914, and November 1, 1915, respectively, alleging that it became the owner of said notes before maturity, paying value therefor. Appellee answered that said notes were executed to said Moore and Marshall for stock in the Sacul Gin & Manufacturing Company, and that said stock was never issued to defendant, and that therefore the consideration of said notes failed, and further that the bank was not an innocent purchaser for value without notice. Appellant, in its supplemental petition, alleged that it was an innocent purchaser and holder of said notes before maturity for value, without notice of the defenses urged by defendant. The case was tried before the court without the aid of a jury, and judgment rendered in favor of defendant. The trial court filed the following conclusions of fact and of law:

"Conclusions of Fact.

"I find that defendant, H. C. Crews, on the 2d day of June, 1913, made, executed, and delivered to B. F. Moore and J. C. Marshall his three promissory notes, payable to B. F. Moore and J. C. Marshall or order; and I further find that the plaintiff, the Commercial Guaranty State Bank of Nacogdoches, Texas, before the maturity thereof and for a valuable consideration paid at the time of said purchase, purchased and is now the owner of two of said promissory notes so made and executed by said defendant, Crews; said two notes so purchased and owned by said plaintiff being of the tenor and effect as follows:

"'$100.00.                Sacul, Texas, 6/2/1913.

"'Nov. 1, 1914, after date, for value received, I promise to pay to B. F. Moore and J. C. Marshall, or order, one hundred dollars at Sacul Guaranty State Bank, to bear interest at the rate of 8 per cent. per annum from date, and further hereby agree that if this note is not paid when due to pay all cost necessary for collection, including ten per cent. for at-

torney's fees. This note is one of a series of three notes given for stock in the Sacul Gin & Mfg. Co.

"'No. 2.　　　[Signed] H. C. Crews.'

"'$100.00.　　　Sacul, Tex., 6/2/1913.

"'Nov. 1, 1915, after date, for value received, I promise to pay to B. F. Moore and J. C. Marshall, or order, one hundred dollars at Sacul Guaranty State Bank, to bear interest at the rate of 8 per cent. per annum from date, and further hereby agree that if this note is not paid when due to pay all costs necessary for collection, including ten per cent. for attorney's fees. This note is one of a series of three notes given for stock in the Sacul Gin & Mfg. Co.

"'Due 11–1–1915.　　　[Signed] H. C. Crews.

"'No. 3.'

"I further find that at the time of the purchase of said two above-described notes by said Commercial Guaranty State Bank, plaintiff, that said notes were at said time delivered to said bank by said B. F. Moore and J. C. Marshall, and that said B. F. Moore and J. C. Marshall at said time duly indorsed each of said notes by writing their names across the back thereof in the following manner: 'B. F. Moore—J. C. Marshall.' I further find that said Commercial Guaranty State Bank, plaintiff, did not purchase the other note, which was executed by said Crews to said B. F. Moore and J. C. Marshall, and at the time of its purchase of the above two described notes knew nothing of the execution, or of the contents, condition, and due date of said other note, except such notice as appeared on the face of the two notes purchased. I further find that at the time said notes were executed and delivered by the said H. C. Crews to said J. C. Marshall and B. F. Moore that J. C. Marshall, one of the payees in said notes, represented to the said H. C. Crews that the Sacul Gin & Manufacturing Company was an existing corporation, and that the consideration of said notes was to be twelve shares of stock in said Sacul Gin & Manufacturing Company at twenty-five dollars ($25.00) per share. I further find that it was the understanding and agreement by and between the said J. C. Marshall and B. F. Moore, the payees in said notes, and H. C. Crews, at the time said notes were executed, that said twelve shares of stock in the Sacul Gin & Manufacturing Company was not to be delivered to said H. C. Crews until said notes were fully paid by him, but that said stock, when made out in favor of H. C. Crews, was to be attached to and retained as security for the payment of said notes. I further find that no stock was attached to the above-described two notes when purchased by and delivered to plaintiff. I further find that no charter was ever obtained for said Sacul Gin & Manufacturing Company, and the same was never incorporated, but that said Sacul Gin & Manufacturing Company, with J. C. Marshall as general manager, operated a gin for two seasons, and procured a book that contained blank certificates for shares of stock in said company, and that it also procured a seal, which had impressed on it 'Sacul Gin & Manufacturing Company, a Corporation'; and I find that one stock certificate was made out and signed up in favor of one J. H. Cole, purporting to be a stock certificate in said Sacul Gin & Manufacturing Company, and which certificate was signed 'B. F. Moore, President—J. C. Marshall, General Manager and Secretary,' and had said seal impressed thereon, and this was the only certificate of stock shown by the evidence to have been made out and signed up in favor of any one in said Sacul Gin & Manufacturing Company.

"I further find that said twelve shares of stock nor any part thereof was ever delivered to said H. C. Crews. I further find that at the time the defendant, H. C. Crews, executed said notes that he believed said Sacul Gin & Manufacturing Company was a corporation. I further find that the plaintiff, Commercial Guaranty State Bank of Nacogdoches, Texas, on November 24, 1913, and before the maturity of either of said two notes purchased by it, became the purchaser and holder of said two notes sued on, and that said bank paid a valuable consideration therefor, and it was an innocent purchaser of said notes for value, without notice of any defense thereto, or fraud or misrepresentations practiced or made in procuring the execution of said notes; and I find that said bank had no notice at the time it became the purchaser of said notes of any fact that would indicate that said notes were not binding and valid obligations against the defendant, unless the following clause in said notes was sufficient to give said bank such notice: 'This note is one of a series of three notes given for stock in the Sacul Gin & Manufacturing Company.'

"I further find that said notes are wholly unpaid, and that plaintiff, since the maturity of said notes, has demanded of defendant the payment of same.

"Conclusions of Law.

"I conclude, as a matter of law, that said notes are void, and therefore uncollectible, for the reason that they recite in their face that they are given for stock in the Sacul Gin & Manufacturing Company, and I further conclude as a matter of law that the recitations in said notes that they were given for stock in the Sacul Gin & Manufacturing Company was sufficient to put the bank on notice that said notes were void.

"I therefore find that plaintiff is not entitled to recover in this cause."

[1] In its first and second assignment of errors appellant contends that the court erred in holding that, because said notes recited on their face that "they were given for stock in the Sacul Gin & Manufacturing Company," they were void. We sustain these assignments, as the trial court found it to be a fact that said Sacul Gin & Manufacturing Company was in fact never incorporated, and therefore, under said finding of fact, the notes in question were not given for stock issued in a corporation, and for the reason that the court found as a fact that it was agreed between the defendant and the payees in said notes, at the time they were executed, that said stock was not to be delivered until said notes were fully paid, and therefore, under said findings of fact, it appears that said notes were not executed for stock issued in a corporation, in contemplation of the Constitution and statutes of this state, and were not void, but were valid and legal obligations.

Article 12, section 6, of the Constitution, declaring that stocks and bonds issued without money paid therefor, etc., shall be void, has received judicial construction in several recent opinions of the Courts of Civil Appeals of this state, and we do not deem it necessary to discuss the question as to the notes in question being void, but will content ourselves with citing the case of Commonwealth Bonding & Casualty Company v. Hill, 184 S. W. 247, wherein Chief Justice Huff, of the Amarillo Court, gives a very able dis-

cussion, and draws the distinction between the giving of notes for stock issued, and the execution of notes for subscription for stock; also in this opinion the case of Farmers' & Merchants' State Bank v. Falvey, found in 175 S. W. 833, is referred to, as well as a number of other decisions. From these decisions, it appears to be the settled rule of law in Texas that notes executed on a subscription for stock in a corporation are not void, but enforceable, and that where stock in a corporation is not delivered to the purchaser, but is attached to notes executed therefor as collateral security, that the same is not stock issued, but is treated as a subscription for stock, the delivery of which is contingent upon the payment of the notes executed therefor.

The court, in its conclusions of fact, found as a fact that the Sacul Gin & Manufacturing Company was never incorporated, and further that it was the understanding between appellee and the payees in the notes sued on, at the time of the execution of said notes, that said stock was not to be delivered to defendant until said notes were fully paid.

[2] By its third and fourth assignment of errors, appellant contends that the court erred in holding that the recitation in said notes that "they were given for stock in the Sacul Gin & Manufacturing Company" was sufficient to put plaintiff on notice of the defenses to said notes that were urged by the appellee. Under the findings of fact by the court, we think that these assignments should also be sustained. The trial court found as a fact that appellant was an innocent purchaser before maturity, without notice of any defense to said notes, unless said recitation was sufficient to give notice. The recitation in each of the notes is as follows:

"This note is one of a series of three notes given for stock in the Sacul Gin & Mfg. Co."

Does this give actual notice of any defense that could have been urged by the appellee herein against the original payees in the notes? We think that such recitation cannot be viewed so as to sustain the conclusions of law of the trial court. Said recitation did not give plaintiff any notice whatever of any misrepresentation made by the payees of the notes, or of any defense that could be urged thereto at the time plaintiff purchased same and paid value therefor before maturity. The notes on their face were not payable to the Sacul Gin & Manufacturing Company, but were payable to B. F. Moore and J. C. Marshall, and would therefore indicate that, at the time said notes were executed, Moore and Marshall owned stock in said company, and had transferred the same to the defendant. The trial court found as a fact that, when the notes were executed, Marshall and Moore, the payees in said notes, represented to appellee that the Sacul Gin & Manufacturing Company was then an existing corporation, and further found that said statement

was untrue, and that said company was in fact never incorporated; but these representations were never brought home to the appellant, and it knew nothing of said alleged misrepresentations, unless the recitations in the notes were sufficient to give such notice.

[3] If a purchaser of commercial paper has no direct knowledge or trustworthy information of any defense which the maker may have against the original payee, and acquires such paper before maturity for value, and for sufficient consideration, he is protected as an innocent purchaser. Mulberger v. Morgan, 47 S. W. 379; Hassard v. May, 152 S. W. 665; Adoue v. Tankersley, 28 S. W. 346; Hardie v. Wright, 83 Tex. 345, 18 S. W. 615.

We are therefore of opinion that the court, under his findings of fact, should have rendered judgment for plaintiff; and, the record disclosing that the case was thoroughly developed upon the trial in the lower court, we reverse the judgment of the lower court, and here render same in favor of appellant.