WEST et al. v. FIRST BAPTIST CHURCH OF TAFT et al.

No. 8631.

Court of Civil Appeals of Texas. San Antonio.

June 24, 1931.

Rehearing Granted July 31, 1931.
Rehearing Overruled Nov. 4, 1931.

Milling, Godchaux, Saal & Milling, of New Orleans, La., and Jno. C. North, of Corpus Christi, for plaintiffs in error.

Boone & Raymer, of Corpus Christi, and Templeton, Brooks, Napier & Brown, of San Antonio, for defendants in error.

COBBS, J.

This suit is brought by the First Baptist Church of Taft, defendant in error, against Southern Mortgage Company, a corporation, Mortgage & Securities Company, a corporation, Guy Hopkins, as receiver of Mortgage & Securities Company, James F. Holliday, individually and as trustee, Mrs. Ethelyn West, Mrs. Margaret West Morris, Mrs. Dorothy West Barham, and Walter P. Napier, May N. Green Watson, John W. Hunt, Edward N. Tutt, and A. C. Tutt, as independent executors and trustees of the estate of Joseph F. Green, deceased, and the Taft Bank, unincorporated, to cancel two certain deeds of trust and the notes secured by same, executed by the plaintiff to the Southern Mortgage Com-

pany and recorded in the deed of trust records of San Patricio county, Tex., on May 2, 1929.

"The Bank also filed a cross action setting up its indebtedness and asked judgment and the establishment and a foreclosure of lien.

"The defendants Mrs. West, et al, answered the answer and cross action of defendant Taft Bank, pleading general and special exceptions. General Denial. By special answer after describing the $20,000.00 series of notes, they alleged that said deed of trust was acknowledged on May 2, 1929, and filed for record in the office of the County Clerk of San Patricio County on the same day at 4:30 p. m. and recorded in Volume 31, pages 1–5 in the Deed of Trust Records of said county; that same fully described said $20,000.00 series of notes and the land securing same, and expressly stipulated that it covered the buildings, furniture, fixtures, furnishings and equipment located, or to be thereafter located on said land. That about June 25, 1929, they purchased said notes without notice of any claim of the said defendant, Bank; paying the full value thereof, and were innocent purchasers of said notes and deed of trust; that any agreement made with reference to the furnishing of money by the Taft Bank to pay for labor and material was made long after the deed of trust and notes had been executed and said deed of trust placed of record, and said defendant Bank had notice that said deed of trust and its provisions including the provision that it covered all the improvements then on said land, or to be placed thereon at any time thereafter, and that if the defendant Taft Bank had any lien on said land, which was expressly denied, then any such lien is second and inferior to the lien securing these defendants in the payment of their notes.

"The case was tried before the Court and judgment rendered on July 4, 1930, for plaintiff against the defendant, Mrs. Ethelyn West, Mrs. Margaret West Morris and Mrs. Dorothy West Barham, cancelling and setting aside the twenty-two promissory notes aggregating $20,000.00 held by these defendants, and the deed of trust, and record thereof securing said notes, and against said defendants and the Southern Mortgage Company for all costs incurred in the cancellation of said notes and deed of trust, and judgment for plaintiff against the defendant, Southern Mortgage Company, Mortgage and Securities Company, and Guy Hopkins, Receiver, cancelling the two $500.00 notes, and second lien deed of trust securing same, and that defendants, Mrs. Margaret West Morris, et al, recover nothing on their cross action asking judgment on their series of $20,000.00 notes. The Court further rendered judgment for the defendant Walter P. Napier, et al, and Taft Bank against plaintiff for the sum of $22,300.00 with eight per cent interest and all costs, and established a lien in favor of the Taft Bank against plain-tiff on the land and premises owned by plaintiff and described in its petition, situated in Taft, Texas, to secure the payment of said sum, foreclosing said lien against all of the defendants as well as plaintiff, in favor of Walter P. Napier, et al, and the Taft Bank against the defendants Mrs. Ethelyn West, et al, on their cross action. Against plaintiff on its alternative action against the Southern Mortgage Company. The defendants, Mrs. Ethelyn West, et al, excepted to the ruling of the Court in open court."

Some time during the year 1929, the First Baptist Church of Taft negotiated with Southern Mortgage Company for a loan of $20,000 for the purpose of erecting a church building. A written application was made for this loan by the church, acting by R. O. Tackett, president of the board of trustees, and a finance committee, composed of Ben C. Ivey, W. C. Binford, and T. V. Arhabrannen. This application contained a full description of the property and of the church to be built. It recited that a deed of trust was to be executed on this property to secure the $20,000 loan, and that the deed of trust was to be a first lien. On the 20th day of April, 1929, the board of trustees of the First Baptist Church passed the required resolution authorizing its president, R. O. Tackett, to borrow the $20,000 from the Southern Mortgage Company and to execute notes, and execute, acknowledge, and deliver to James F. Holliday, trustee, a deed of trust to secure said notes. The resolution further authorized R. O. Tackett to execute a second deed of trust and series of notes and deliver same to James F. Holliday, and it further expressly authorized R. O. Tackett, as president of its board of directors, to execute, acknowledge, and deliver any and all other papers and documents required in connection with said loan, and provided that the deeds of trust, notes, and interest coupons shall bear date as of March 9, 1929.

The first series of notes, 22 in number, aggregating $20,000, and a deed of trust securing them, were executed by R. O. Tackett, as president of the board of trustees, and dated March 9, 1929. The deed of trust was filed for record on May 2, 1929. At the same time R. O. Tackett, acting for the church, executed the second series of notes, aggregating only $1,000, and secured by a deed of trust, reciting that it was a second lien to the $20,000 notes.

R. O. Tackett, acting for the First Baptist Church, after having these deeds of trust and the resolution of the board of trustees included in a supplemental abstract, sent this abstract, together with the two series of notes, to the Southern Mortgage Company at Abilene, Tex., on May 8, 1929.

Upon receipt of these notes by the Southern Mortgage Company, they were immediately forwarded to the Mortgage & Securities Com-

pany on May 9, 1929. It is contended that neither Mrs. Ethelyn West nor her sisters ever visited Taft, Tex., and none of them were acquainted with any one in Taft. But plaintiff contended that there was sufficient data in the papers submitted to Mrs. West at the time the salesman for the Mortgage & Securities Company was negotiating the sale of these notes to her to put her on notice and require her to investigate and ascertain the conditions under which plaintiff claims the notes were executed and delivered.

Mrs. Ethelyn West and her sisters lived in Louisiana all of their lives, and had frequently purchased notes, bonds, and other negotiable securities from the Mortgage & Securities Company, as well as other such concerns in New Orleans, but they had no knowledge, express or implied, concerning the transaction with the church or the bank.

After the notes were received by the Mortgage & Securities Company, Mr. Frank Wood, a salesman for that company, undertook the sale of the $20,000 series of first lien notes to Mrs. Ethelyn West. After considering the matter, she decided to purchase the notes. The application for loan submitted to Mrs. West, for her examination at the time these notes were submitted to her for purchase, stated that the church was to be completed on or before July 1, 1929, and it was represented to her by the Mortgage & Securities Company that the notes were ready for delivery and sale, and, as she had known this to be a large and reliable concern at all times, and had had dealings with them before, she relied upon such representations and purchased the notes and paid the full value for same.

The application for loan by the First Baptist Church of Taft, submitted to Mrs. West for examination, contained a provision that the net proceeds of the loan shall be paid out by the Southern Mortgage Company as construction proceeds, such payments to begin after the church had been completed to a point where the $20,000 would finish same, and providing that such payments were to be made by the Southern Mortgage Company monthly as construction proceeds, and neither Mrs. West nor her sisters ever had any notice or knowledge of the fact that this condition was not being complied with, and never knew that the Southern Mortgage Company was not advancing the money under this loan with which to complete the building.

At the time these notes were executed for the First Baptist Church and delivered to the Southern Mortgage Company in Abilene, an agreement was made by the church and the Taft Bank whereby the Taft Bank agreed to loan the church, or advance to the church, the money with which to construct this building and to look to this loan for a repayment of same. At the time of making this agreement, the bank knew that the deeds of trust had been placed of record, or could have

known this fact, as they were of record in San Patricio county at the time the agreement was made. After this agreement, the Taft Bank did advance to the church certain money that was used by the church in paying for the material used in the construction of this church and labor on same, and also for furniture for the church. The matter was handled some time by a note being given by the church to the bank and credit given the church for the amount, then checked out by the pastor of the church, who was also a member of the building committee, by voucher checks given to various parties for labor or material used in the church. Sometimes these checks would be cashed, and apparently an overdraft created, and the church would come down, through Rev. Binford, thereafter, and execute a note, but all payments made by the church for labor or material used under the oral agreement were by checks given as above stated. Neither Mrs. West nor her sister had any notice or knowledge of this agreement, or any notice or knowledge of the fact that the bank was advancing any money at any time, and there was no record of any sort of same until long after they had purchased and paid for the notes involved in this suit.

After plaintiff filed this suit, E. N. Tutt attempted to create a lien on the church property by filing an affidavit in the contractors' lien records of San Patricio county, stating that the Taft Bank was due $16,806.39 on account of labor and material furnished in the erection of the church building. On September 15, 1929, Cage Hardware & Furniture Company assigned to the Taft Bank an account due it by the First Baptist Church in the sum of $520.45. Thereafter, on various dates, the Conibear-Jackson Company, the Garnett Church Furniture Company, the Pittsburgh Plate Glass Company, and Jack Wheatley gave the Taft Bank certain assignments of accounts due them for material furnished and used in the erection of the church, the account due to the Garnett Furniture Company being for furniture for the church. None of these had been filed by the parties as materialman's liens, being simply assignments of accounts, but the Taft Bank nevertheless caused them to be recorded in the office of the county clerk in the mechanic lien records of San Patricio county. These various assignments are shown in the statement of facts, pp. 217 to 242.

The court rendered a judgment in favor of the Taft Bank for all of the money advanced to the church by it, and foreclosed it as a first lien on the church property.

James F. Holliday was dismissed, and the court rendered judgment for plaintiff against the defendants Mrs. Ethelyn West and her sister, canceling the $20,000 series of notes purchased by them, and the deed of trust given to secure same, and also against the

Mortgage & Securities Company and Guy Hopkins, receiver, canceling the two notes and the second deed of trust and a judgment in favor of the Taft Bank against plaintiff, the First Baptist Church of Taft, for the sum of $22,300, and declaring, establishing, and foreclosing a lien on the property belonging to the church as a first and superior lien, and this appeal is by the defendants Mrs. Ethelyn West and her sisters attacking the court's judgment canceling their notes, and also its judgment establishing a lien in favor of the Taft Bank as a first lien for any money advanced by it.

Under the facts in this case, plaintiffs were good-faith purchasers of said notes secured by deed of trust. It was a completed transaction. The church had the right to enter in such a contract for the erection of its church building, and the contract it made with the bank to finance the same was likewise valid.

There is not any evidence in this case that the plaintiffs in error are charged with any fraud or bad faith, but they are innocent purchasers of the notes, for value, before maturity, evidenced by a very complete building contract. It is not clear whether the building contract was completed or not at the time the purchase was made, but that is not important, since all the preliminary steps had been taken and proper papers made and filed for record, fixing the lien. Vernon's Ann. Tex. Stats. art. 5935; Mountjoy Parts Co. v. San Antonio National Bank (Tex. Civ. App.) 12 S.W.(2d) 609; Hamilton-Turner Gro. Co. v. Hander et al. (Tex. Civ. App.) 253 S. W. 833; Forster v. Enid, O. & W. R. Co. et al. (Tex. Civ. App.) 176 S. W. 788; Wilson v. Denton, 82 Tex. 531, 18 S. W. 620, 27 Am. St. Rep. 908; First Nat. Bank of Aubrey v. Chapman (Tex. Civ. App.) 164 S. W. 900; Campbell v. Rosenow (Tex. Civ. App.) 32 S.W.(2d) 372; Commercial Guaranty State Bank v. Crews (Tex. Civ. App.) 196 S. W. 901; Goolsby v. Manning (Tex. Civ. App.) 270 S. W. 936; Spurlock v. Zaring (Tex. Civ. App.) 270 S. W. 1099; Daniel v. Spaeth (Tex. Civ. App.) 168 S. W. 509; Carpenter v. Longan, 16 Wall. (83 U. S.) 271, 21 L. Ed. 313; Perkins v. Sterne, 23 Tex. 561, 76 Am. Dec. 72.

They were good-faith purchasers for value without any notice of any vice or other illegal acts in the notes, and there were none. Section 52 of article 5935, R. S. Sections 56 and 59 of the same article. These notes were made payable at the Mortgage & Securities Company in New Orleans, La., and bore interest from date, with interest coupons attached, and it was known by R. O. Tackett and all of the parties involved in this suit connected with the First Baptist Church of Taft, or the Bank of Taft, that the notes were to be sold and negotiated by the payee, and that the money to be paid to the church was to be procured in that manner. It was not

the duty of Mrs. West to ascertain that the money was to be used in the erection of the building or that it had been completed. She had the right to rely upon the contract as made between the bank and the church. She had the perfect right to rely upon the fact that the contract would be carried out and the church completed and the money paid over. The notes were indorsed by the payee and offered to her by the banking institution where they were made payable, and at the time of the actual delivery it was represented to her that they were ready for delivery and represented as a completed transaction. The rule of law is very clear that a mortgage made in pursuance of a previous agreement of the parties to place a mortgage on the specific property which the mortgagee has agreed to accept, then the act of the mortgagor in filing it for record in the proper office is a sufficient delivery of it. Such an agreement existed here. The deed of trust was in fact prepared by the Southern Mortgage Company and sent to the First Baptist Church, with the request that it be placed of record for the Southern Mortgage Company and then included in the abstract and returned to the Southern Mortgage Company.

The affidavit attempting to create a lien in favor of Taft Bank was dated August 28, 1929. It states: "E. N. Tutt, acting herein as the duly authorized officer of the Taft Bank, makes oath," etc. It does not contain any itemized account or statement, and is not in statutory form, and shows on its face that it is executed by Tutt for the bank, $16,806.39, and only attempts to create a lien on the five lots described in the deed of trust as "First Tract," but does not cover the three lots described therein as "Second Tract." It was filed in the contractors' lien records, in volume 1, pp. 9 and 10. "Prior to the institution of this suit I never heard of either Mrs. Ethelyn West, Mrs. Margaret West Morris or Mrs. Dorothy West Barham. I have never at any time had any communication from either of them, nor have I ever talked with them personally at any time, never have met them. No one acting for them has ever communicated with me, either verbally or in writing, over the phone or by telegraph."

On cross-examination he testified: "At the time we made the agreement to advance this money the church had on deposit there in our bank, in its building account, something around approximately $12,000.00. The money was continued to be carried on in that same account. They were already using this form of check or order at the time we made the arrangement with them to advance the additional money with which to complete the church, and we agreed just to continue the use of this same form of checks—the church used up all of the money they had on hand, and then the church began giving us notes. They gave us a note for $5,000.00 on June 4th.

It is true that these transfers and assignments were paid out of an entirely different fund from this building fund—the money paid out on these transfers and assignments had been collected and paid back to us and is represented by those notes."

In this case, the bank could not have an equitable lien by virtue of the oral agreement made to furnish money to the church with which to pay for the labor and material to be used in its completion, consequently any lien must be under the materialman's lien statute, or Constitution, which is impossible.

We think the court erred in its judgment against plaintiffs in error, and the cause will be reversed and remanded for another trial.

Reversed and remanded.

## On Motion for Rehearing.

SMITH, J.

The note in controversy was executed by the church officials for a consideration no part of which was ever paid, and which therefore wholly failed. It was payable according to its terms to the Mortgage Company, which assigned it to the Securities Company, which in turn assigned it to appellants, who brought this suit against the makers to recover thereon. The trial court found, and such finding is not attacked by any assignment of error urged by appellant on this appeal, that:

"At the time the notes were sent by Southern Mortgage Company of Abilene, Texas, from Abilene, Texas, to and received by Mortgage & Securities Company at New Orleans, Louisiana, and at all times hereinafter in this and subsequent paragraphs of these findings, the officers of both Southern Mortgage Company and Mortgage & Securities Company knew the conditions upon which said notes had been sent to and were held by Southern Mortgage Company, knew the purpose of which plaintiff had applied for the loan; that said conditions had not been complied with, that said notes were not to be negotiated and were not negotiable, and would not be ready for negotiation until the building had been completed, inspected and accepted by Southern Mortgage Company, as erected, completed and finished in acordance with said plans and specifications for the same, and the proceeds of said notes received by plaintiff; and said Southern Mortgage Company and Mortgage & Securities Company, and the officers thereof, knew at the times aforesaid, that said building had not been completed, that it was still in process of construction, and that it would be some time before the same would be completed, and knew that plaintiff had not received any money or anything of value for said notes."

Appellants knew, nearly two months before they purchased the note, that it was given in consideration of a construction loan, to be made in the future at uncertain intervals, in uncertain amounts, upon uncertain contingencies. They knew the conditions upon which the note was given and enforceable. They were, in short, in possession of all the facts known to the payee and then holder affecting its negotiability. They knew that the then holder had no right to negotiate it, that the consideration for it had not been paid, and was not payable and would not be paid except upon the happening of uncertain future contingencies, and that its failure would render the obligation subject to defeat upon that ground. They were definitely advised that the note was not "ready for delivery," because the consideration for it had not been paid, and that the loan was not a "good loan" until it was "ready for delivery," and admitted that they would not have purchased the note had they known that the conditions of the loan had not been completed "and the money paid." All this information was in the actual possession of appellants for nearly two months prior to the time they purchased the note and paid for it. They finally took it solely upon the verbal statement of the selling agent from whom they purchased it that the instrument was "ready for delivery." In the face of all their knowledge of the conditions and uncertainties and future contingencies affecting the negotiability of the note, that the holder had obtained possession of it before the consideration for it had been paid, before it was negotiable, before it was ready for delivery, appellants made no effort to ascertain the true facts, paid no heed to the danger signals flying all about them, and were content to proceed upon the verbal assurance of the broker with whom they were dealing, and upon whom they "relied," that the note was "ready for delivery."

It is true that the rule which puts a prospective purchaser upon inquiry has no application to the purchaser of a negotiable instrument, generally. But, when the maker asserts, as in this case, that the purchase was not made in good faith or in due course, the burden is thereby shifted to the purchaser to show affirmatively that he had purchased in due course and under circumstances which do not amount to bad faith, which raises an issue of fact triable by the judge or jury, to be determined from all the facts and circumstances in evidence, including the conduct of the purchaser in closing his eyes to facts reasonably calculated to induce a careful or bona fide purchaser to inquire into the true facts affecting the negotiability of the instrument. And where, as in this case, the purchaser acquires specific knowledge that the instrument is not at the time negotiable, and proceeds to purchase in spite of that knowledge and without making reasonable investigation to ascertain if the known infirmities have been removed from the obligation, the court trying the case may properly

resolve the issue against the purchaser, as the trial court did in this case.

A majority of this court have concluded upon rehearing that the finding of the trial court in this case upon the issue does not disclose such abuse of the discretion lodged in that court as to warrant reversal thereof by this court, and that the judgment should be affirmed. Associate Justice COBBS does not concur in this conclusion.

Appellees' motion for rehearing will be granted, and the judgment affirmed.

FLY, C. J.

I concur in the foregoing opinion on rehearing.