## WARREN CENTRAL R. CO. et al. v. TEXAS CREOSOTING CO.

### No. 2416.

Court of Civil Appeals of Texas. Beaumont.

June 29, 1933.

Rehearing Overruled in Part and Granted in Part July 19, 1933.

Andrews, Streetman, Logue & Mobley and Bryan, Cosby, Suhr & Bering, all of Houston, for plaintiff in error.

E. L. Reid, of Orange, and Baker, Botts, Andrews & Wharton, of Houston, for defendant in error.

WALKER, Chief Justice.

On January 14, 1931, appellee, Texas Creosoting Company, a corporation, and appellant, Warren Central Railroad Company, a corporation, duly chartered under the laws of the state of Texas, hereinafter referred to as appellant railroad company, entered into a written contract whereby appellee agreed to sell, and appellant railroad company agreed to buy, certain railroad material, fully described in the contract as to character of material, place and time of delivery, and terms and conditions of payment. This material was to be used, and in fact was used, by appellant railroad company in the construction of its line of railroad, hereinafter referred to, in process of construction when the contract was made. The delivery of material under the contract was completed by appellee and accepted by appellant railroad company during the first days of May, 1931. In the written contract it was stated that appellant railroad company was a corporation with its domicile in Harris county, Tex., and that the delivery of the material could be made at appellant's creosoting plants or at Katy, one of the terminal points on appellant railroad company's line of railroad. In order to fix in its favor the materialman's lien, created by the provisions of article 5452, R. S. 1925, appellee filed its written contract under which the material was furnished with the county clerk of Harris county on May 25, 1931, who, on May 28, 1931, duly recorded the same, together with the following notice, which was attached to the contract:

"The State of Texas, County of Orange.

"In order to perfect its lien upon the hereinafter described property, Texas Creosoting Company herewith files its contract, which is hereto attached marked Exhibit 'A' and here referred to and made a part hereof.

"The improvements and the tract of land upon which same are located, all of which the undersigned is informed, are owned by 'Warren Central Railroad Company', are described as follows:

" 'Warren Central Railroad.'

"The material mentioned in such contract was furnished to Warren Central Railroad Company in the construction of a railroad.

"Texas Creosoting Company

"By A. H. Gardes, Controller.

"Materialman."

In liquidation of the purchase price of the material furnished as above stated, appellant executed to appellee two promissory notes; one dated February 16, 1931, due ninety days after date, for the sum of $20,194.01, the other dated May 1, 1931, due the 18th of June, 1931, for the sum of $4,336.02, both notes stipulating for interest at 6 per cent. per annum from date, and the usual 10 per cent. attorney's fees. These notes were endorsed by appellants Howard Kenyon, J. E. Edmundson, J. E. Brown, G. M. Jackson, and M. S. Lehrer. These appellants will be hereinafter referred to as indorser appellants. These notes were not paid, and in adjustment thereof appellant railroad company and the indorser appellants executed a series of new notes, dated the 22d day of July, 1931, covering all the indebtedness due appellee for the material furnished. These notes were executed by appellant railroad company as principal, and indorsed by indorser appellants, as were the original notes. Contemporaneously with the execution of these notes, appellant railroad company executed to appellee a contract lien against all its railroad property to secure their payment, but in doing so made no effort to comply with the Stock and Bond Law of the state of Texas, with special reference to article 6526 et seq., R. S. 1925. This contract contained the following material provisions:

"Party of the second part agrees and binds itself to receive and accept upon delivery hereof, of this contract and signing and execution of same in lieu of and extension and in place of the notes hereinbefore referred to, the following described promissory notes of party of the first part, to wit."

"As well as acceptance of party of the first part by party of the second part of the five notes heretofore referred to, and the extension of the obligation evidenced thereby."

"* * * It is further understood and agreed by and between the parties hereto that the contract lien herein given by the Party of the First Part to Party of the Second Part shall in no wise be in derogation to the statutory rights of the Party of the Second Part to secure itself for the payments remaining due for the materials delivered and sold to Party of the First Part, as hereinabove recited, that is to say, this contract lien shall not be in derogation of any statutory liens, if any, of which Party of the Second Part may take advantage, to further secure itself."

And in explanation of this contract A. H. Gardes, appellee's controller, testified as follows:

"Q. State whether or not the material called for in this contract has already been furnished, and if it in fact was the basis of these notes. A. Yes.

"Q. Was the note paid when due? A. No.

"Mr. Reid: Answer this, then: Do you know whether or not the debt evidenced by this contract and made the basis of these notes has ever been paid? A. The debt has not been paid."

On cross-examination under interrogation by Mr. Bryan he testified as follows:

"Q. You gave the first series of notes back? A. Yes.

"Q. They were cancelled and you took the new notes in evidence of your claim. A. We took them in evidence of the indebtedness."

On the execution of the second series of notes, the first series was surrendered to appellant railroad company. On July 6, 1931, appellee was pressing appellant railroad company for payment of the above-described indebtedness, with interest and attorney's fees, which was then due, and upon which it had the right to sue. Appellant Howard Kenyon Dredging Company, a corporation, knew of this indebtedness and that appellee was demanding its payment. Appellant railroad company at that time was heavily indebted to appellant Howard Kenyon Dredging Company, and that company was endeavoring to assist appellant railroad company to finance its obligations by borrowing money to discharge or greatly reduce its indebtedness. Appellant Howard Kenyon Dredging Company was aware that, if suit was instituted by appellee, appellant railroad company could be financed only with the greatest difficulty. Accordingly, on the 6th day of July, 1931, an agreement was entered into by and between appellee and appellant Howard Kenyon Dredging Company to the effect that, if appellee would not institute suit against appellant railroad company until after July 20, A. D. 1931, appellant Howard Kenyon Dredging Company would subordinate all its rights, claims, demands, and liens which it then held, or might thereafter become entitled to, to the debts and liens then held by appellee against appellant railroad company, and that the debts and liens of appellee should be paid in full before appellant Howard Kenyon Dredging Company would have any rights, claims, or demands against the assets of appellant railroad company. On the 22d day of July, A. D. 1931, the agreement, as summarized, was reduced to writing and duly executed by both parties thereto. Appellee fully executed its part of this agreement, in that it did not institute this suit until December, 1931.

With the exception of a small payment, appellants defaulted in the payment to appellee of the above-described indebtedness, whereupon appellee instituted this suit against appellant railroad company and indorser appellants to recover the amount of the notes, principal, interest, and attorneys' fees; and to foreclose its statutory lien and contract lien against the railroad properties

of appellant railroad company; and against appellant Howard Kenyon Dredging Company for an order adjudging appellee's claim superior to any claim held by this appellant.

Without summarizing the answers of appellants, it is sufficient to say that they presented by their answers the propositions upon which they base this appeal, and which will be hereinafter discussed.

Upon trial to the court without a jury, judgment was rendered in favor of appellee against appellant railroad company and the indorser appellants for the full amount of its indebtedness, as above described, however, with foreclosure of its statutory lien only for the amount of its indebtedness, less attorneys' fees. The judgment was to the further effect that the claim of appellee should have preference over all claims of appellant Howard Kenyon Dredging Company.

Opinion.

■ Article 6525, R. S. 1925, being a section of the Stock and Bond Law of the state of Texas, prescribes the method by which a railroad company may issue its bonds "in advance of the completion of the said railroad." This article of the statute has no relation whatever to the creation of a lien under the provisions of article 5452, R. S. 1925, for material furnished in the construction of a railroad. Discussing statutory liens against the property of railroad companies, the court said in Bryan College Interurban R. Co. v. Kropp (Tex. Civ. App.) 197 S. W. 733, 734: "Appellant seems to labor under the impression that there was an attempt to create a lien by the execution of the notes, but that is not the case. The notes were executed merely to preserve the evidence of the debt; the law had created the lien. Rev. St. art. 5640. The law gives an absolute lien to all mechanics, laborers, and operatives who may have performed labor, or worked with tools, teams, or otherwise in the construction, operation, or repair of any railroad, locomotive, car, or other equipment, and to whom wages are due or owing for such work, etc. It is provided in article 5643 that the lien created by article 5640 shall cease to be operative in 12 months after the creation of the lien, if steps are not taken to enforce it. The lien was created by the performance of the labor and not by the execution of the notes, which were merely a recognition of the existence of the debt. Article 6742 has no application to the notes herein sued on. The notes did not create the lien; the law created it."

That case supports the conclusion that appellee's claim for the material sold appellant railroad company was not created in violation of the Stock and Bond Law of the state, and was therefore valid.

■ Appellants erroneously contend that the second series of notes constituted a novation in the original indebtedness, and that the execution of the second series of notes liquidated and discharged the first series. The trial court found, as a fact issue, that the second series of notes was executed merely in extension of the first series. This conclusion has support in the record. As shown by the quotations given above from the contract of July 22, 1931, it was expressly recognized that the second series of notes were in "extension of the obligation evidenced thereby," and that the contract lien should not be in derogation of the statutory lien. The quotations made from the testimony of A. H. Gardes clearly sustain the conclusion that the parties executed the second notes upon the agreement that they were in renewal and extension of the original notes, and not in discharge thereof. The authorities fully support the conclusions of the trial court on the issue of "novation." In Watson v. First State Bank of Dallas, 237 S. W. 1106, 1107, the Commission of Appeals said:

"The giving of a new note by the original parties by way of renewal preserves the debt, and the rights of the creditor to the property pledged, though the contract of pledge is not renewed. 8 C. J. p. 443, § 656, and page 442, § 654; 31 Cyc. p. 852; Hardie v. Wright, 83 Tex. 345, 348, 18 S. W. 615.

"In the absence of an express agreement to the contrary by the creditor, the acceptance of the note of one or more joint obligors bound for a pre-existing debt is not a payment thereof, and does not release other joint obligors, who did not sign such note."

■ As there was no novation, the approval of the Railroad Commission was not necessary to make valid the second series of notes.

■ There is no merit in appellants' contention that the delivery of the first series of notes by appellee to appellant railroad company established "novation" as a matter of law. In view of the recitations in the contract by which the second series of notes were executed and the other circumstances given above, the surrender of the first series of notes was merely evidentiary on the issue of "novation," and the court's conclusion thereon, notwithstanding the surrender of the first series of notes, has abundant support.

■ Appellants assert that appellee has no valid statutory lien, because of the insufficiency of the description of the property of appellant railroad company, given in the "notice" accompanying the contract under which the "materials" were sold and delivered, as filed with the county clerk of Harris county. As we construe articles 5455–5457, appellee literally complied with all the legal requirements in the description, given in the notice, which is set out above in hæc verba. It is provided by article 5455 that, where material is furnished a railroad company "to construct or repair its railroad or other property," it shall be necessary only to give "its charter

name." The "notice" literally complied with this legal requirement. As the contract and notice were filed at the time and in the manner provided by law, the statutory lien created by article 5452 was fixed against appellant railroad company's property in favor of appellee.

Since appellee complied literally with the statute in fixing its statutory lien, thereby creating a valid lien in its favor, we pretermit a discussion of appellee's counter proposition that, as there were no subsequent lienholders, it was not necessary to file its contract with the county clerk of Harris county in order to create the lien provided for by article 5452.

■ The description of the property of the railroad company, as given in the judgment foreclosing appellee's statutory lien, was sufficient to support an order of sale. This description was as follows:

"All of the properties of the Warren Central Railroad Company, which properties are more particularly described as:

"1. The following lines of railway, roadbeds and rights-of-way of the Warren Central Railroad Company, all located in the County of Harris, State of Texas; the main line of the Warren Central Railroad Company, all within the County of Harris, State of Texas, beginning at a point at or about Mile Post 33 on the main line of the Houston & Texas Central Railroad Company and running in a southwest and westerly direction to a point at or about Mile Post 1056 on the main line of the Missouri, Kansas & Texas Railroad Company of Texas, a distance of approximately —— miles, more or less.

"2. All of the real estate, and all estate and interest in real estate owned by the Warren Central Railroad Company, wherever located, provided such real estate is used for, in or about the ownership or possession thereof by the Warren Central Railroad Company is essential to the operation of the railways or railway properties of the Warren Central Railroad Company, or any part thereof, together with all structures, improvements and fixtures, constructed or situated upon any such real estate, including lands comprised in rights-of-way belonging to the Railroad Company, and all appurtenances in and hereditaments whenever acquired, appertaining to any such real estate."

■ As the notes were valid, there is no merit in the proposition of appellant indorsers that they were not liable thereon. Their abstract proposition, that "an endorser of a note which is in contravention of statutory requirement and which is void ab initio is not liable thereon," has no application to the facts of this case because these notes were not void ab initio but were valid obligations.

■ The court did not err in overruling appellants' plea in abatement. Their proposition on this issue is as follows: "A plaintiff holding an original obligation by defendant in lieu of which a subsequent valid obligation of defendant in novation of the original obligation has been delivered to plaintiff, must declare upon and elect upon which obligation he proposes to hold defendant liable, and having elected, he is bound by such election."

The facts do not support the proposition, as there was "no subsequent valid obligation" in novation of the original obligation.

■ As we understand appellants' argument, they contend that the trial court should have compelled appellee to elect between the first series of notes and the second series of notes, and between the statutory lien and the contract lien. This contention is not sound. The second series of notes was a mere extension and renewal of the first series, and the contract lien was executed on the condition that it was not in derogation of the statutory lien. The judgment on the second series of notes was a complete adjudication of the amount of appellee's demand. The foreclosure of the statutory lien was authorized because it had not been abrogated. There was no adjudication on the contract lien, so it passed out of the case as completely as if appellee had amended its petition by eliminating all allegations in reference thereto.

■ The contract by the Howard Kenyon Dredging Company whereby it conceded to appellee a preference was not void as being ultra vires. This contract was upon a valuable consideration which was fully executed by appellees. Appellant Howard Kenyon Dredging Company received from the contract all it contracted to receive; that is, the postponement by appellee of the filing of this suit. It did not agree to pay any of the debts of appellant railroad company nor did it pledge any of its property to secure such debts. It merely agreed that its lien, if any, should be subordinated to the lien of appellee. There was no contention by appellee to fasten any liability whatever upon appellant Howard Kenyon Dredging Company, nor does the judgment so decree. The following authorities fully sustain this conclusion: Parlin & Orendorff Implement Co. v. Frey (Tex. Civ. App.) 200 S. W. 1143 (error denied); Itasca Roller Miller & Elevator Co. v. Wooten (Tex. Civ. App.) 246 S. W. 678; Farmers' State Bank of Merkel v. First State Bank of Abilene (Tex. Civ. App.) 260 S. W. 664 (error denied).

Appellants' sixth proposition to the effect that a constitutional or statutory materialman's lien exists in favor of the materialman only and does not include the payment of attorney's fees, incident to the enforcement of such materialman's lien, is based upon a mis-

conception of the judgment. The material-man's lien was foreclosed in favor of appellee only to the extent of the balance due for material furnished, and did not include attorney's fees.

It follows that the judgment of the lower court should be in all things affirmed, and it is accordingly so ordered.